[No. D010931. Fourth Dist., Div. One. Dec. 15, 1989.)

TORREY PINES BANK, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
WILLIAM A WHITE et al., Real Parties in Interest.

**COUNSEL**

Brobeck, Phleger & Harrison, Theodore W. Graham, William F. Sullivan and Ross A. Epstein for Petitioner.

No appearance for Respondent.

Lynn H. Ball for Real Parties in Interest.

## OPINION

**KREMER, P. J.**—Petitioner Torrey Pines Bank (the Bank) seeks mandate directing the superior court to vacate its ruling denying the Bank's motion for summary judgment on its complaint against real party in interest William White. We find the Bank is entitled to judgment as a matter of law because the affirmative defenses asserted in White's answer to the Bank's complaint are barred under principles of res judicata.

I

### FACTS

For purposes of the Bank's motion for summary judgment, the following facts are undisputed: In February 1984 White executed a written continuing guaranty unconditionally guaranteeing prompt payment of all current or later-incurred indebtedness of Mesa Circuits, Inc. (Mesa), to the Bank.

In June 1984 White executed a Small Business Administration (SBA) guaranty as a part of a SBA guaranteed term loan agreement under which the Bank disbursed $550,000 to Mesa.

In June 1986 the Bank extended to Mesa a $500,000 line of credit under a loan agreement.

In February 1987 the Bank informed White that Mesa was in default on both the Bank loan and the SBA loan.

During 1987 Mesa's assets were liquidated and its subsidiary sold. The Bank received sums satisfying portions of the principal of Mesa's debts to the Bank.

White did not pay the Bank anything required under his continuing guaranty agreement or his SBA guaranty agreement.

## II

### PLEADINGS

In December 1987 in San Diego Superior Court case number N38961, the Bank filed a "complaint by creditor against guarantors on guaranties" against White and Rudolph Shaffer. The Bank's complaint's first cause of action seeks to enforce White's continuing guaranty, favoring the Bank, securing debt incurred by Mesa. The second cause of action seeks to enforce White's SBA guaranty favoring the Bank.

In April 1988 in San Diego Superior Court case number 597676, Mesa filed a complaint against the Bank and its officers for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, negligent misrepresentation and negligence.

Later in April 1988 the parties stipulated in case number N38961 that White and Shaffer would file separate answers without cross-complaints or cross-claims. Also during April 1988 White answered the Bank's complaint in case number N38961 and asserted 13 affirmative defenses.[1]

In July 1988 White and Shaffer individually and as Mesa's guarantors filed a first amended complaint against the Bank and its officers in case number 597676. The first amended complaint deleted Mesa as plaintiff and asserted causes of action for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, negligent misrepresentation and negligence. The first amended complaint alleged the Bank misrepresented the terms of an offer by Mesa to the SBA to restructure the Bank loan and the SBA loan.

In February 1989 under Code of Civil Procedure section 581, White filed a dismissal with prejudice of his lawsuit in case number 597676.[2]

---

[1] White's affirmative defenses: (1) the Bank's complaint's did not state a cause of action; (2) equitable estoppel; (3) unclean hands; (4) comparative negligence; (5) failure of consideration; (6 and 7) waiver; (8) White's full performance; (9) justification; (10) failure to mitigate damages; (11) breach of fiduciary duties; (12) fraud; and (13) misrepresentation.

White's 13th affirmative defense specifically alleged he did not perform the guaranty's conditions because "plaintiff [the Bank] prevented performance under the guarantee by misrepresentation of the offer of plaintiff's sureties to retire one of the other respective loans. Plaintiff willfully and intentionally withheld information from the federal guarantee agency, namely, the SBA for their [sic] own benefit. At all times relevant herein mentioned, defendant [White] was and is ready, willing and able to perform the aforementioned condition, but plaintiff has prevented and continues to prevent defendant's performance."

[2] Code of Civil Procedure section 581 provides in relevant part: "(b) An action may be dismissed in any of the following instances: [¶] (1) With or without prejudice, upon written request of the plaintiff to the clerk, filed with papers in the case, or by oral or written request to

## III

## THE BANK'S MOTION FOR SUMMARY JUDGMENT

In August 1989 the Bank sought summary judgment or alternatively summary adjudication of 11 issues against White in case number N38961.[3] The Bank did not seek summary judgment against Shaffer.

In September 1989 after hearing, the court granted summary adjudication of issues numbers 3 and 4. The court denied the Bank's motion for summary judgment and summary adjudication of the remaining issues as the court found "the retraxit doctrine does not bar the affirmative defenses asserted by defendant White in this separate proceeding and that there is a triable issue of fact re: whether the plaintiff's alleged injury is a result of its own negligence and whether Civil Code Sections 2819 and 2845 provide defendant with a defense per White's responses to interrogatories, numbers 11 and 12."[4]

---

the court at any time before the actual commencement of trial, upon payment of the costs, if any.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(c) A plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial."

Code of Civil Procedure section 581d provides in relevant part: "A written dismissal of an action shall be entered in the clerk's register and is effective for all purposes when so entered."

All statutory references are to the Code of Civil Procedure unless otherwise specified.

[3] The Bank sought summary adjudication of the following issues against White:

"1. That William A. White's continuing guaranty is valid and enforceable;

"2. That William A. White's SBA Guaranty is valid and enforceable;

"3. That the Bank made two loans amounting to $1,050,000 to Mesa Circuits, Inc. ('Mesa') in reliance on and in consideration for the aforementioned guaranties;

"4. That Mesa defaulted on both loans;

"5. That the Bank has performed all acts required of it by both loan agreements and both of White's guaranties, entitling it to White's performance;

"6. That White breached his agreements to guarantee Mesa's debts;

"7. That as a result of White's breach of the guaranties, the Bank has been damaged in the principal amount of $514,438.06, plus accrued interest;

"8. That the Bank is entitled to recover from White costs of suit and attorneys' fees;

"9. That White's voluntary dismissal with prejudice of San Diego Superior Court Case No. 597676 constitutes a judgment on the merits of the claims and issues stated therein;

"10. That such dismissal, as a matter of law, collaterally estops White in this action from raising [the second through ninth and eleventh through thirteenth affirmative defenses]; and

"11. That White has failed to raise issues of material fact in support of [the first and tenth affirmative defenses] . . . ."

[4] In his answers to the Bank's interrogatories, White stated in part: "The principal reason for the default of Mesa Circuits was interference by the Plaintiff [the Bank] in the process of refinancing from alternate sources that destroyed the capacity of the primary borrower to repay its loan. . . . Plaintiff bank undertook to convey an offer of settlement on a significant

The Bank seeks mandate under section 437c, subdivision (*l*), directing the superior court to grant its motion for summary judgment against White on the entire action.

## IV

### DISCUSSION

#### THE BANK IS ENTITLED TO SUMMARY JUDGMENT

■ The record contains undisputed evidence White guaranteed payment of Mesa's indebtedness to the Bank, Mesa defaulted on its loans, the Bank notified White of Mesa's defaults, and White did not remit any funds to the Bank under his two guaranty agreements. Thus, the Bank established the material elements of its causes of action against White in case number N38961. That evidence was also sufficient to overcome White's affirmative defense that the Bank's complaint did not state facts sufficient to constitute a cause of action.

■ White's other affirmative defenses are barred under principles of res judicata. Such affirmative defenses assert the same nucleus of operative facts and raise the same legal issues as those alleged in White's first amended complaint in case number 597676. White's voluntary dismissal with prejudice of his lawsuit in case number 597676 constituted a retraxit and determination on the merits invoking the principles of res judicata barring

---

portion of the indebtedness. This offer was changed by Plaintiff in such a way as to induce the Small Business Administration to deny the requested refinancing and was delayed in such a way as to preclude further negotiation. . . . [¶] . . . It is my contention that any amounts due and owing from [Mesa] are not payable by me by virtue of discharge based on material breach of the guarantee agreement. Plaintiff breached the underlying implied term of cooperation and lack of prevention by interference with the capacity of the primary borrower to repay. At the same time Plaintiff concealed the extent of liability on my part. The plaintiffs did so by agreeing to transmit an offer of a payment on a loan subject to SBA guarantee. Following agreeing to do so, the Plaintiffs changed our offer and acted to materially interfere with the capacity of the primary borrowers [Mesa and its subsidiary] to repay. Further, this concealment, in breach of the guarantee agreement, deprived me of knowledge concerning the growing depth of my obligation for several months despite the fact that such knowledge was material to my decision to allow further credit to be extended by Plaintiff."

Civil Code section 2819 provides: "A surety is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

Civil Code section 2845 provides: "A surety may require the creditor, subject to Section 996.440 of the Code of Civil Procedure, to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue, and which would lighten the surety's burden; and if the creditor neglects to do so, the surety is exonerated to the extent to which the surety is thereby prejudiced."

relitigation of those issues as affirmative defenses in case number N38961. (Cf. *Roybal* v. *University Ford* (1989) 207 Cal.App.3d 1080, 1085 [255 Cal.Rptr. 469].)

## A

### WHITE'S VOLUNTARY DISMISSAL CONSTITUTES A RETRAXIT

■ " 'A retraxit has always been deemed a judgment on the merits against the plaintiff, estopping him from subsequently maintaining an action for the cause renounced.' (2 Freeman, A Treatise on the Law of Judgments (1925) § 757, p. 1595.)" (*Roybal* v. *University Ford, supra*, 207 Cal.App.3d at p. 1086.) A retraxit is equivalent to a judgment on the merits and as such bars further litigation on the same subject matter between the parties. (*Gates* v. *Superior Court* (1986) 178 Cal.App.3d 301, 311 [223 Cal.Rptr. 678]; *Rodriguez* v. *Fireman's Fund Ins. Co.* (1983) 142 Cal.App.3d 46, 54 [190 Cal.Rptr. 705], disapproved on another point in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58]; *Wouldridge* v. *Burns* (1968) 265 Cal.App.2d 82, 85 [71 Cal.Rptr. 394]; *Sylvester* v. *Soulsburg* (1967) 252 Cal.App.2d 185, 189 [60 Cal.Rptr. 218]; *Datta* v. *Staab* (1959) 173 Cal.App.2d 613, 621 [343 P.2d 977].)

A dismissal with prejudice is the modern name for a common law retraxit. (*Robinson* v. *Hiles* (1953) 119 Cal.App.2d 666, 672 [260 P.2d 194].) Dismissal with prejudice under section 581 "has the same effect as a common law retraxit and bars any future action on the same subject matter. (*Wouldridge* v. *Burns* (1968) 265 Cal.App.2d 82, 84 [71 Cal.Rptr. 394]; *Ghiringhelli* v. *Riboni* (1950) 95 Cal.App.2d 503, 506 [213 P.2d 17].)" (*Roybal* v. *University Ford, supra*, 207 Cal.App.3d at p. 1087; accord *Kronkright* v. *Gardner* (1973) 31 Cal.App.3d 214, 218-219 [107 Cal.Rptr. 270].) Dismissal with prejudice is determinative of the issues in the action and precludes the dismissing party from litigating those issues again. (*Gagnon Co., Inc.* v. *Nevada Desert Inn* (1955) 45 Cal.2d 448, 455 [289 P.2d 466]; *Roybal* v. *University Ford, supra*, at pp. 1085-1087; *Palmquist* v. *Palmquist* (1963) 212 Cal.App.2d 340, 343 [27 Cal.Rptr. 756]; *Datta* v. *Staab, supra*, 173 Cal.App.2d at p. 621; *Sears* v. *DeMota* (1958) 157 Cal.App.2d 216, 220 [320 P.2d 579]; *Ghiringhelli* v. *Riboni* (1950) 95 Cal.App.2d 503, 506 [213 P.2d 17].) "Relevant language providing for a plaintiff's voluntary dismissal with prejudice was introduced into section 581 to limit the plaintiff's leeway to abandon a case and then refile it. (Stats. 1947, ch. 990, § 1, p. 2256; Howell, *The Work of the 1947 California Legislature* (1947) 21 So.Cal.L.Rev. 1, 8-9.) The statutory term 'with prejudice' clearly means the

plaintiff's right of action is terminated and may not be revived." (*Roybal* v. *University Ford, supra,* at pp. 1086-1087.)

■ The dismissal with prejudice terminated White's action and affected the parties' rights. The dismissal with prejudice was a final judgment favoring the Bank. (*Gagnon Co., Inc.* v. *Nevada Desert Inn, supra,* 45 Cal.2d at p. 455; *Roybal* v. *University Ford, supra,* 207 Cal.App.3d at p. 1086; *Kronkright* v. *Gardner, supra,* 31 Cal.App.3d at p. 218.) "The bar raised by a dismissal with prejudice is equal, under the doctrine of res judicata, to the bar raised by a judgment on the merits." (*Sears* v. *DeMota, supra,* 157 Cal.App.2d at p. 222.) Thus, White's dismissal with prejudice of his lawsuit in case number 597676 constituted a final judgment invoking the bar of res judicata. (*Roybal* v. *University Ford, supra,* at p. 1087.)

## B

### RES JUDICATA BARS WHITE'S AFFIRMATIVE DEFENSES

White's dismissal with prejudice in case number 597676 barred another action by White against the Bank based on the same factual grounds alleged in his first amended complaint. We hold White's dismissal with prejudice also precluded him from asserting those identical facts as affirmative defenses to the Bank's complaint in case number N38961.

■ "Under traditional rules of res judicata, a party may be barred ('collaterally estopped') from relitigating issues that were previously adjudicated in an earlier proceeding." (*Wittman* v. *Chrysler Corp.* (1988) 199 Cal.App.3d 586, 591 [245 Cal.Rptr. 20].) ■ The rule of res judicata " 'is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy.' (*Miller & Lux Inc.* v. *James,* 180 Cal. 38, 44 [179 P. 174].) '[A] final judgment on the merits in a prior action is conclusive between the same parties in a subsequent action involving the same subject matter.' (*Hamilton* v. *Carpenter,* 15 Cal.2d 130, 133 [98 P.2d 1027].)" (*Boucher* v. *Kriehn* (1947) 80 Cal.App.2d 437, 441 [182 P.2d 218].) Res judicata bars "not only the reopening of the original controversy, but also subsequent litigation of all issues which were or could have been raised in the original suit. [Citations.]" (*Gates* v. *Superior Court, supra,* 178 Cal.App.3d at p. 311.)

In *Hamilton* v. *Carpenter* (1940) 15 Cal.2d 130 [98 P.2d 1027], defendants in a real estate foreclosure action alleged affirmative defenses that they entered the underlying transaction in reliance on the plaintiff's fraudulent misrepresentations. In light of a final adjudication on the fraud issue against defendants in an earlier action between the parties commenced by those

defendants, the trial court declined to permit defendants to introduce any evidence addressed to the fraud allegations of their affirmative defenses. In affirming, the appellate court stated: "Examination of the allegations in the complaint for damages for fraud in the earlier action, and of those relied on by the defendants here in their third and fourth affirmative defenses, discloses that they are substantially identical, and we have no hesitancy in declaring that if a final adjudication thereof was had in the earlier action it is *res judicata,* and this, even though a few additional alleged misrepresentations are here set forth, for, obviously, a litigant may not split his cause of action, advancing a portion at a time to the harassment of his adversary." (*Id.* at p. 132.) The appellate court also stated: "It is the general rule, applicable to the facts of this case, that a final judgment on the merits in a prior action is conclusive between the same parties in a subsequent action involving the same subject matter. Such a judgment was tendered in bar of the present affirmative defenses based on the issues thereby determined. When received in evidence it was conclusive between the parties hereto upon those same matters. [Citations.] The issues of fraud very definitely were litigated by these parties in the prior action, both in the trial court and on appeal, and the court properly refused to receive evidence on the same issues alleged in the affirmative defenses of the defendant herein. Its finding on the issue of *res judicata* is supported by the judgment roll in the former action which was introduced in evidence in the present action." (*Id.* at p. 133.) ▮ Similarly, the final judgment on the merits favoring the Bank against White in case number 597676 was conclusive between the same parties in the Bank's action against White in case number N38961. The earlier judgment barred White's present affirmative defenses on the issues determined by the judgment.

The fact the judgment favoring the Bank in case number 597676 was entered after a voluntary dismissal instead of after a full trial does not compel a result contrary to the holding in *Hamilton v. Carpenter, supra,* 15 Cal.2d 130. The dismissal with prejudice was a retraxit constituting a decision on the merits invoking the principles of res judicata. (*Gagnon Co., Inc. v. Nevada Desert Inn, supra,* 45 Cal.2d 448, 455; *Roybal v. University Ford, supra,* 207 Cal.App.3d at p. 1085; *Gates v. Superior Court, supra,* 178 Cal.App.3d at p. 311; *Rodriguez v. Fireman's Fund Ins. Co., supra,* 142 Cal.App.3d at p. 54; *Wouldridge v. Burns, supra,* 265 Cal.App.2d at p. 85; *Sylvester v. Soulsburg, supra,* 252 Cal.App.2d at p. 189; *Palmquist v. Palmquist, supra,* 212 Cal.App.2d at p. 343; *Datta v. Staab, supra,* 173 Cal.App.2d at p. 621; *Sears v. DeMota, supra,* 157 Cal.App.2d at p. 220; *Ghiringhelli v. Riboni, supra,* 95 Cal.App.2d at p. 506.)

## C

### STIPULATION IS IRRELEVANT TO RETRAXIT

In April 1988 the parties executed the following stipulation in case number N38961: "This Amended Stipulation supersedes all prior stipulations entered into between Plaintiff Torrey Pines Bank and Defendants William A. White and Rudolph B. Shaffer, Jr. regarding the vacating of defaults against Defendants and the setting of time for filing of answers by Defendants, and accurately reflects the agreements between Plaintiff and Defendants expressed herein. This Amended Stipulation is entered into in order to correct any inaccuracies or ambiguities in prior stipulations covering the matters expressed herein and to record the agreements reached by the parties.

"Plaintiff Torrey Pines Bank, by and through its attorney of record, John J. Chung, Esq. of DEWEY, BALLANTINE, BUSHBY, PALMER & WOOD, and Defendants William A. White and Rudolph B. Shaffer, Jr., by and through their attorney of record, BUFORD B. WILEY, JR., ESQ., hereby stipulate and agree that the Plaintiff's Requests to Enter Default on William A. White and Rudolph B. Shaffer, Jr. are hereby withdrawn and the defaults entered herein are vacated.

"Said parties further stipulated and agreed that Defendants William A. White and Rudolph B. Shaffer, Jr. would file separate answers without cross-complaints or cross-claims to Torrey Pines Bank's Complaint and that such answers would be filed on or before April 12, 1988. Said parties further stipulated and agreed that if such answers were not filed on or before April 12, 1988, said parties would stipulate and agree to an entry of default and default judgment against Defendant William A. White and/or Rudolph B. Shaffer, Jr."

White contends the doctrine of retraxit should not apply here because the Bank stipulated he could answer the Bank's complaint without cross-complaint or cross-claim. White asserts application of the doctrine of retraxit would not be appropriate because after the stipulation was filed he simply decided to dismiss his lawsuit in case number 597676 and rely on his answer filed months earlier in case number N38961. However, assuming the parties' stipulation was properly in evidence, we find nothing in the stipulation's language suggesting that applying the doctrine of retraxit would be inappropriate. White could have avoided retraxit simply by dismissing his lawsuit without prejudice. Further, where as here two separate actions are concurrently pending involving the same issues and parties "it is the first final judgment, even though rendered in the second action, that renders the

issue res judicata in the other action." (*First N.B.S. Corp.* v. *Gabrielsen* (1986) 179 Cal.App.3d 1189, 1195 [225 Cal.Rptr. 254].)

## D

### CONCLUSION

■■■ "The doctrine of collateral estoppel obviates the need to relitigate issues in a second action already adjudicated in the first action. (*Lockwood* v. *Superior Court* (1984) 160 Cal.App.3d 667, 671 [206 Cal.Rptr. 785].) There are three prerequisites which must be shown before the doctrine will be applied: (1) the issue in the second action must be identical to the issue adjudicated in the first action; (2) the first action must have proceeded to a final judgment on the merits; and (3) the party against whom the collateral estoppel is to be asserted must have been a party, or in privity with a party, to the first action. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 603-604 [25 Cal.Rptr. 559, 375 P.2d 439].)" (*Tushinsky* v. *Arnold* (1987) 195 Cal.App.3d 666, 672 [241 Cal.Rptr. 103].) ■■■ All three prerequisites are present here. The issues raised by White's affirmative defenses in case number N38961 are identical to the issues adjudicated in case number 597676. Case number 597676 proceeded to a final judgment on the merits. White was a party to both lawsuits.

■■■ "If the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which could have been raised [citation]." (*Eichman* v. *Fotomat Corp.* (1983) 147 Cal.App.3d 1170, 1174-1175 [197 Cal.Rptr. 612].) " ' "It is the title, right or obligation sought to be established or enforced, not the remedy or the relief sought, which determines the nature and substance of the cause of action. When this has once been adjudicated it cannot be relitigated upon any grounds that were or that could have been determined in the former action." ' " (*Kronkright* v. *Gardner, supra,* 31 Cal.App.3d at pp. 216-217, quoting *Owl Drug Co.* v. *Bryant* (1953) 115 Cal.App.2d 296, 302 [252 P.2d 69]; accord *Neil Norman, Ltd.* v. *William Kasper & Co.* (1983) 149 Cal.App.3d 942, 947 [197 Cal.Rptr. 198].)

■■■ The superior court should have granted the Bank's motion for summary judgment against White. Further, the Bank is entitled to costs and attorney fees from White. (§ 1021.)

### DISPOSITION

Let mandate issue directing the superior court to enter summary judgment favoring the Bank against White. On proper application, the superior

court shall also determine the amount of costs and attorney fees due the Bank from White.

Todd, J., concurred.

**HUFFMAN, J.,** Dissenting.—The majority opinion holds an individual liable for a loan guaranty for an amount of over $500,000 although he has raised claims by way of affirmative defense which, if true, would totally relieve him of responsibility for those sums. Yet, at this stage of the proceedings, no trier of fact has ever passed on the factual or legal merits of those defenses, no witnesses have been called, nor any documents produced on the truth or falsity of his claimed defense. Why then is this person unable to defend against such an enormous liability? Because he committed a retraxit![1]

Simply put, White's attorney, for no reason apparent on this record, dismissed with prejudice a lawsuit in which White was a coplaintiff. The dismissal was neither negotiated for consideration nor was it compelled by the court. It is unknown why this course of action was followed as opposed to the use of a dismissal without prejudice, which would have been perfectly satisfactory to terminate the suit for any purpose we can discern.

Because of this simple, if inexplicable, event, the majority opinion applies retraxit to produce issue preclusion in a separate case, thereby preventing White from raising any affirmative defenses therein. However, no reported case found by either party or by the court has gone so far, and there is good reason for such dearth of authority. In examining the theoretical underpinnings of collateral estoppel, one can find no justification for issue preclusion where the issues were never "actually litigated" by the parties.

I believe the majority, in making its analysis of this problem, incorrectly applies well-established rules from the field of res judicata, restricting the ability of a party who previously dismissed an action to pursue a second such action, to the quite different situation of deciding whether a defense in

---

[1] Of course, all common law scholars will immediately recognize the term retraxit even if the majority of practitioners and judges will have to repair to their respective libraries in order to seek a definition of that ancient phrase. (See maj. opn., *ante*, at p. 820.) Black's Law Dictionary (5th ed. 1979) at page 1183 defines retraxit in this manner: "[A] voluntary renunciation by plaintiff in open court of his suit and cause thereof, and by it plaintiff forever loses his action. [Citation.] It is equivalent to a verdict and judgment on the merits of the case and bars another suit for the same cause between the same parties. [Citation.]" In *Roybal v. University Ford* (1989) 207 Cal.App.3d 1080, 1087 [255 Cal.Rptr. 469], we noted the common law requirement of renunciation in open court has been dispensed with by the procedure provided in Code of Civil Procedure section 581. (All statutory references are to the Code of Civil Procedure unless otherwise specified.)

a civil case stemming from the same set of facts must be barred. Because collateral estoppel is a "distinct aspect of the doctrine of res judicata" (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 253, p. 691), and because retraxit is likewise an aspect of res judicata which becomes applicable where two successive actions are involved, collateral estoppel principles are applicable and must be considered here. However, the majority approach fails to take into consideration an important factor in collateral estoppel analysis, whether the party who dismissed the action ever had a day in court to actually litigate the claims asserted. Moreover, these facts require an examination into the importance of the fact that this record does not reveal that the dismissal was made in return for any consideration.

In *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605-606 [25 Cal.Rptr. 559, 375 P.2d 439], the Supreme Court explained the policy reasons underlying the doctrine of collateral estoppel and outlined certain limitations on the preclusive effect of a felony plea of guilty by a party in a criminal case in a subsequent civil action relating to the same conduct. The court set forth these fundamental policies underlying collateral estoppel: " 'The rule is based upon the sound public policy of limiting litigation by preventing a party *who has had one fair trial on an issue* from again drawing it into controversy.' (*Bernhard* v. *Bank of America,* [1942] 19 Cal.2d 807, 811 [122 P.2d 892].) 'This policy must be considered together with the policy that a party shall not be deprived *of a fair adversary proceeding in which fully to present his case.*' (*Jorgensen* v. *Jorgensen,* [1948] 32 Cal.2d 13, 18 [193 P.2d 728].) When a plea of guilty has been entered in the prior action, no issues have been 'drawn into controversy' by a *'full presentation'* of the case. It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation. Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice [citation] combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, *seeks for the first time to litigate his cause* in a civil action." (Italics added.)

The Supreme Court in *Gagnon Co., Inc.* v. *Nevada Desert Inn* (1955) 45 Cal.2d 448, 455 [289 P.2d 466], emphasized that res judicata is not a principle susceptible of mechanical application: "It would seem clear that a dismissal with prejudice by plaintiff of its action is a bar to a subsequent action on the same cause; otherwise there would be no meaning to the 'with prejudice' feature. 'A dismissal with prejudice terminates the action and the rights of the parties are affected by it. It is a final judgment in favor of defendants and they are entitled to recover their costs. *But a mere statement that a judgment of dismissal is "with prejudice" is not conclusive. It is the nature of the action and the character of the judgment that determines whether it is res judicata.* The intention of the court to make a determination

on the merits may be important, but *if the judgment is clearly not on the merits,* the court's intention is immaterial.'" (Italics added.)

Further limitations on issue preclusion are addressed in the Restatement Second of Judgments, section 27: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (Rest.2d Judgments (1982) § 27.)

The key operative phrase within the Restatement is the term "actually litigated," and the Supreme Court similarly emphasized this factor in *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601. From these authorities I conclude the policies underlying the principle of collateral estoppel are not served by applying issue preclusion to affirmative defenses raised by a defendant who, for reasons not disclosed in the record, previously dismissed a prior action based on the same facts without any litigation on the merits ever having taken place. Just as the Supreme Court hypothesized in *Teitelbaum, supra,* that dismissal could have been made for reasons unrelated to establishing a conclusive judgment on the merits. I do not believe existing authority compels the harsh result reached by the majority.

For example, in *Roybal* v. *University Ford, supra,* 207 Cal.App.3d 1080, this court held a dismissal with prejudice pursuant to section 581 constituted a retraxit barring the maintenance of a second separate action. We pointed out "[r]elevant language providing for a plaintiff's voluntary dismissal with prejudice was introduced into section 581 to limit the plaintiff's leeway to *abandon a case and then refile it.* [Citations.]" (*Roybal* v. *University Ford, supra,* 207 Cal.App.3d at p. 1086, italics added.) Also in *Roybal, supra,* 207 Cal.App.3d 1080, we discussed the requirement of consideration which some courts had imposed upon dismissals in order to give them the effect of a retraxit. (See, e.g., *Markwell* v. *Swift & Co.* (1954) 126 Cal.App.2d 245 [272 P.2d 47] (overruled on another point in *Stewart* v. *Cox* (1961) 55 Cal.2d 857, 861 [13 Cal.Rptr. 521, 362 P.2d 345]); *Hildebrand* v. *Delta Lumber etc. Co.* (1944) 67 Cal.App.2d 88 [153 P.2d 377]; *Key* v. *Caldwell* (1940) 39 Cal.App.2d 698 [104 P.2d 87]; *Hawber* v. *Raley* (1928) 92 Cal.App. 701 [268 P. 943].) We concluded the res judicata effect of Roybal's voluntary dismissal with prejudice did not depend upon the presence of any consideration for the dismissal. (*Roybal, supra,* 207 Cal.App.3d at p. 1086.)

However, the facts in *Roybal, supra,* 207 Cal.App.3d 1080, presented only the issue of the viability of a second action after the dismissal of a prior

similar one; we were not required in our discussion of the effect of a dismissal without any consideration to consider the distinction between the maintenance of a second action and the presentation of a defense based on the same facts. Thus, the reasoning in *Roybal* on retraxit and on the issue of consideration for a dismissal is not dispositive here.

The result in *Roybal, supra,* 207 Cal.App.3d 1080, although harsh in barring a plaintiff who may inadvertently have checked the wrong box on a dismissal form from refiling the action, is at least consistent with prior law. *Roybal,* however, does not reach the issue of whether issue preclusion in the form of collateral estoppel would be proper to prevent a defendant such as White from raising affirmative defenses in a lawsuit, notwithstanding an earlier dismissal of his own action in which the facts supporting those affirmative defenses were never actually litigated, and where nothing was received in return for the dismissal. Special considerations of fairness should apply to that situation, in which the issue to be decided is whether a party should be precluded from putting on a full defense. No one can dispute that a litigant's right to have his or her case heard on the merits before a trier of fact is precious and should yield only where sound principles of public policy compel that result. In my opinion, that is not the case here.

Just as with *Roybal, supra,* 207 Cal.App.3d 1080, the other cases relied upon by the majority opinion to address the estoppel effect of prior judgments are not helpful in this matter because they arose out of different procedural contexts and involved factual considerations not present here. For example, the majority relies upon the language of *Hamilton* v. *Carpenter* (1940) 15 Cal.2d 130 [98 P.2d 1027] which indicates that defendants could be precluded from asserting an affirmative defense where the issues raised had been finally adjudicated in an earlier action. The difficulty with reliance on *Hamilton,* however, is that the earlier action went to trial where the issues underlying the claims were actually litigated before a trier of fact. In *Gagnon Co., Inc.* v. *Nevada Desert Inn, supra,* 45 Cal.2d 448, 454 a judicial proceeding was also involved before dismissal took place, in which the dismissal with prejudice barring further litigation was entered by the court upon plaintiff's motion for judgment of dismissal.

Similarly, in *Gates* v. *Superior Court* (1986) 178 Cal.App.3d 301, 311 [223 Cal.Rptr. 678], another pertinent factor not present in this case was key to the result; the dismissal found to bar further litigation on the same subject matter was based on a stipulated judgment following a settlement agreement reached upon some sort of consideration. The same type of stipulated settlement for consideration was found to operate as a retraxit in *Datta* v. *Staab* (1959) 173 Cal.App.2d 613, 621 [343 P.2d 977], and in *Rodriguez* v. *Fireman's Fund Ins. Co.* (1983) 142 Cal.App.3d 46, 54 [190 Cal.Rptr. 705]

(disapproved on other grounds in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 310 [250 Cal.Rptr. 116, 758 P.2d 58]). (Accord *Ghiringhelli* v. *Riboni* (1950) 95 Cal.App.2d 503, 505-506 [213 P.2d 17]; *Wouldridge* v. *Burns* (1968) 265 Cal.App.2d 82, 86 [71 Cal.Rptr. 394]; *Sylvester* v. *Soulsburg* (1967) 252 Cal.App.2d 185, 193 [60 Cal.Rptr. 218]; *Sears* v. *DeMota* (1958) 157 Cal.App.2d 216, 219-220 [320 P.2d 579].)

Concededly, certainty in the law and bright lines for the guidance of counsel and the courts, such as are provided by the doctrines of res judicata and retraxit, are good things. The avoidance of repetitive litigation, conservation of judicial resources, and giving certainty to judgments are likewise valuable goals. However, as the Supreme Court has taught, the nature of the action and the character of the prior judgment (or dismissal) must determine the applicability of the doctrine of res judicata. (*Gagnon Co., Inc.* v. *Nevada Desert Inn, supra*, 45 Cal.2d 448, 455.)

In my judgment, there is no reason in policy or logic, and no requirement in authority, to apply the doctrine of issue preclusion to bar the assertion of a defense where there has been no actual litigation of the underlying issues and where the facts disclose no consideration was given in return for a party's dismissal of the complaint with prejudice. Sufficient controls on litigation and adequate sanctions are provided when the litigant is barred from refiling as a complaint any version of the lawsuit that was, for whatever reason, dismissed with prejudice. I do not believe the technical harshness of the doctrine of retraxit extends to create issue preclusion under the circumstances present in this case. For these reasons, I conclude the trial court's ruling on the motion for summary judgment and adjudication was correct, and I cannot join in the analysis or the result reached by the majority.