Filed 1/30/15  Pacifica L 39 LLC v. Ramy CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PACIFICA L 39 LLC,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>HORMOZ RAMY et al.,<br><br>      Defendants and Appellants. | B255803<br><br>(Los Angeles County<br>Super. Ct. No. BC480956) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Kevin C. Brazile, Judge.  Affirmed.

Law Offices of Nejat Kohan, Inc. and Nejat Kohan for Defendants and Appellants.

The Grant Law Firm and Alexander J. Kessler for Plaintiff and Respondent.

Defendants and appellants Hormoz Ramy and Nejat Kohan (collectively, defendants) appeal from the judgment entered in favor of plaintiff and respondent Pacifica L 39 LLC (plaintiff) after the trial court granted plaintiff's motion for summary adjudication of its causes of action for breach of construction loan guarantees executed by defendants. We affirm the judgment.

## FACTUAL BACKGROUND

Defendants are officers and shareholders of Spanish Inn, Inc. (Spanish Inn) a corporation that owned a 60-room hotel built in Palm Springs in the 1930's (the Spanish Inn property). Plaintiff is the assignee of loan guaranties executed by defendants, as well as the underlying notes and loan documents executed by Spanish Inn.

**$6 million loan and guaranties**

On April 18, 2008, Spanish Inn executed a promissory note for a $6 million loan made by Nara Bank for the purpose of renovating the Spanish Inn property. The loan was secured by a construction deed of trust on the property. As additional security, defendants each executed a commercial guaranty of the note. The guaranties each contained express waivers of defendants' rights and defenses, including any defenses that could be asserted by Spanish Inn, and any defenses available under Civil Code sections 2787 through 2855.

The original maturity date of the $6 million note was October 18, 2009, but Nara Bank and Spanish Inn entered into a subsequent written agreement extending the maturity date.

**$1.3 million loan and guaranties**

On March 25, 2010, Spanish Inn executed a second promissory note for an additional $ 1.3 million loan, also secured by a construction deed of trust on the Spanish Inn property. In addition, defendants each executed a commercial guaranty of the $1.3 million note. The guaranties contained the same waivers of rights and defenses as those contained in the guaranties of the $6 million note. The maturity date of the $1.3 million note was December 18, 2010.

2

Because of problems with the renovation, Nara Bank and Spanish Inn entered into subsequent written agreements to extend the maturity dates of both loans. The final extension was until May 15, 2011.

**Default and assignment**

Spanish Inn defaulted on both loans by failing to repay the amounts owed on the $6 million note and the $1.3 million note by the May 15, 2011 maturity date. Defendants also defaulted on their obligations under the guaranties by failing to repay any amount owed on the notes. On May 27, 2011, Nara Bank initiated a non-judicial foreclosure of the Spanish Inn property by recording a Notice of Default and Election to Sell Under Deed of Trust.

On July 11, 2011, Nara Bank assigned its rights under the notes, the guaranties, and all related loan documents to plaintiff.

**Foreclosure**

On September 2, 2011, plaintiff recorded a Notice of Unified Trustee's Sale, setting the sale of the Spanish Inn property at public auction for September 22, 2011. At the trustee's sale, which was continued to December 14, 2011, plaintiff acquired the Spanish Inn property by a credit bid of $3.5 million.

## PROCEDURAL BACKGROUND

Plaintiff commenced this action for breach of the guaranties, declaratory relief, and to set aside alleged fraudulent conveyances and transfers. After defendants filed their answer, plaintiff moved for summary adjudication of the breach of guaranty causes of action.

In support of their motion, plaintiff submitted a separate statement of undisputed facts, supported by the declarations of its Director of Acquisitions and Development and of a Nara Bank Senior Vice President, and by the notes, guaranties and other loan documents.

Defendants opposed the motion, arguing that a triable issue of fact existed as to whether the guaranties were enforceable. Defendants claimed that Nara Bank's performance of its obligations under the loan agreements was a condition precedent to

3

their obligations under the guaranties, and that Nara Bank had breached the loan agreements, thereby excusing both Spanish Inn's obligations under the notes and defendants' obligations under the guaranties. As evidence of Nara Bank's alleged breaches, defendants submitted the declaration of defendant Kohan.

Plaintiff objected to the Kohan declaration in its entirety. The trial court sustained objections to paragraphs 7 through 14 and 22, and to exhibit C of the Kohan declaration. Because the Kohan declaration was the only evidence submitted by defendants, after the trial court's evidentiary rulings, there was no evidence that Nara Bank had breached the loan agreements.

The trial court also found that defendants had expressly waived the right to assert, as a defense to enforcement of the guaranties, any of Spanish Inn's defenses against Nara Bank, and that those defenses therefore could not be used to raise any triable issue of material fact. The trial court granted the motion for summary adjudication and found defendants liable, jointly and severally, for damages in the amount of $3,422,376.71 on the guaranties of the $6 million note, and for $1,374,384.09 on the guaranties of the $1.3 million note, for a total of $4,981.792.79.[1]

Plaintiff subsequently dismissed its remaining causes of action, and judgment was entered against defendants, jointly and severally, in the amount of $4,981,792.79. This appeal followed.

## DISCUSSION

### I. Standard of review

A motion for summary judgment or summary adjudication is properly granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) When reviewing the grant of a motion for summary judgment or summary adjudication, we independently consider whether a triable issue of material fact exists and whether the moving party is entitled to summary judgment or adjudication as a matter of law. (*Haney v. Aramark*

---

[1] We note that $3,422,376.71 plus $1,374,384.09 equals $4,796,760.80, not $4,981,792.79.

4

*Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 631.) "There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. Initially, the moving party bears a burden of production to make a prima facie showing of the nonexistence of any genuine issue of material fact. If he carries his burden of production, he causes a shift: the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a genuine issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845 (*Aguilar*).)

We review the trial court's evidentiary rulings for abuse of discretion. (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.)

## II. Evidentiary rulings

Defendants contend the judgment should be reversed because the trial court abused its discretion by sustaining plaintiff's evidentiary objections to the Kohan declaration. Defendants argue that the disputed portions of the Kohan declaration establish triable issues of fact as to whether their obligations under the guaranties were excused because Nara Bank breached the loan agreements.

### *Exhibit C and paragraph 7*

The trial court sustained plaintiff's objections to exhibit C and to paragraph 7 of the Kohan declaration on the grounds that the statements contained therein were irrelevant and inadmissible under Evidence Code section 210.

The statements made in paragraph 7 of the Kohan declaration are based on exhibit C and the facts alleged in paragraph 6. Paragraph 6 states that beginning in 2009, Nara Bank took a considerably longer amount of time to approve Spanish Inn's requests to reallocate loan funds than such approvals had taken previously:

> "6. When the loan was originally approved in 2008 I submitted a proposal as to how the original $6 million should be allocated among various tasks (e.g. plumbing, electrical, framing, etc.). It turned out, however, that some of the allocations were excessive and some were short. From June of 2008 until March of 2011 I submitted 18 requests to

reallocate funds so that tasks performed by certain subcontractors could be paid for. In the beginning the reallocations took between one to five days to approve, with the majority of those taking only one day. However, starting in 2009 the reallocations took between 7 and as much as 31 days. A true and correct photocopy of the list of Reallocations is attached hereto as **Exhibit C**."

Exhibit C, the evidence offered in support of the statements made in paragraph 6, is a list of dates on which reallocations were purportedly requested and approved. The Kohan declaration does not identify who prepared exhibit C, when it was prepared, or whether the preparer had personal knowledge of the information contained therein. Given this lack of foundation, the trial court did not abuse its discretion by sustaining the objections to exhibit C of the Kohan declaration. (See, e.g., *Taggart v. Super Seer Corp.* (1995) 33 Cal.App.4th 1697, 1706-1707 [foundation for a business record not established because declaration failed to identify the record, specify how it was prepared, and what sources of information it was based upon].)

Paragraph 7 of the Kohan declaration states that Nara Bank's purported delay in approving reallocations caused subcontractors to quit working on the project:

"7. Early in the project this delay did not matter because each account had large amounts in it. However, by 2011 some of the accounts that I needed funds from were down to zero. This meant that the subcontractors or material providers pertaining to those accounts could not be paid until there was a reallocation. Even when an allocation was approved the business to be paid would not receive payment for another week or so. Because of this delay a number of my subcontractors walked off the job and would not come back, even after the[y] finally received the payment. This is a significant reason why I could not obtain the certificate of occupancy by the deadline."

Neither paragraphs 6 and 7, nor any other paragraph in the Kohan declaration, states that Nara Bank's alleged delays were a breach of any duty owed to Spanish Inn or to defendants under the loan agreements. Defendants offered no evidence that Nara Bank owed any duty to approve loan reallocation requests within a specific time period, or that the bank's failure to do so constituted a breach of any specific provision of the loan

6

documents. The trial court accordingly did not abuse its discretion by sustaining plaintiff's objections to paragraph 7 of the Kohan declaration.

### *Paragraphs 8 and 9*

Paragraphs 8 and 9 of the Kohan declaration state:

> "8. In addition to the reallocations there was a 'reserve' fund that had $108,000. This represented payments approved and funded by Nara Bank that, for various reasons, were never sent to the subcontractor by First American Fund Control. An example of how this happened involved a demand for payment by Southern California Edison. I requested payment which was approved. Before Edison was paid, however, it agreed the amount was not owed. Rather than changing the accounting records to add that amount back to the allocated item, Fund Control put it in the reserve account.

> "9. This $108,000 was critical to completion of the project. This money should have been replaced into the allocated accounts. Had that been done a number of the subcontractors could have been paid, they would have finished their work and the project would have been completed on time. . . ."

The trial court sustained plaintiff's objections to paragraphs 8 and 9 for lack of foundation, lack of personal knowledge, and relevance because the Kohan declaration does not identify First American Fund Control, how Kohan had personal knowledge that First American Fund Control was disbursing loan funds, or how conduct by First American Fund Control breached any duty owed by Nara Bank to Spanish Inn or to defendants. Plaintiff objected to paragraph 9 on the additional ground that Kohan's claim that the "project would have been completed on time" is based, not on personal knowledge, but on speculation of what might have occurred under different circumstances.

Defendants argue that Kohan's personal knowledge concerning First American Fund Control is based on the fact that Kohan "was personally involved in every meeting and or conversation with representatives of Nara Bank," that "it is obvious that First American was responsible for distributing the funds supplied by Nara Bank," and that "it is clear that Kohan would know the process for distributing and reallocating the funds."

7

Kohan's personal involvement in meetings and conversations with Nara Bank is insufficient to establish personal knowledge that First American Fund Control, a wholly separate entity, was disbursing loan funds or that First American Fund Control's alleged conduct constituted a breach of the loan agreement by Nara Bank. (See *Snider v. Snider* (1962) 200 Cal.App.2d 741, 754 [bare statement in declaration that facts stated therein are within declarant's personal knowledge insufficient to establish personal knowledge absent facts demonstrating such knowledge].)

The trial court did not err by sustaining the objections to paragraphs 8 and 9 of the Kohan declaration for lack of foundation. (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26 ["declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded"].)

### *Paragraph 10*

Paragraph 10 of the Kohan declaration states:

> "10. In spite of numerous written and oral requests, Nara Bank refused to have the reserve funds returned to the appropriate allocated accounts or to an account that would allow me to have the subcontractors paid directly. This also contributed to my inability to finish the project on time."

The trial court sustained plaintiff's objections to paragraph 10 as lacking foundation and relevance because no evidence was offered to establish that Nara Bank had a duty to return funds to a particular account.

Defendants argue that Nara Bank's refusal "to reallocate the funds as it had done in the past" constituted a breach of the bank's obligations, thereby relieving defendants and Spanish Inn of any liability. Neither the Kohan declaration nor defendants' opposition to the motion for summary adjudication establish any duty by Nara Bank to return reserve funds to a particular account. There is accordingly no foundation for the statements made in paragraph 10. The trial court did not err by sustaining the objections to paragraph 10 of the Kohan declaration.

8

*Paragraph 11*

Paragraph 11 of the Kohan declaration states:

"11. At all times Spanish Inn complied with every obligation imposed on it under the loan agreements, except for those that were extended by mutual agreement of the parties. The exception is the failure to meet the May 6, 2011 deadline for the Certificate of Occupancy. However, that was beyond the control of Spanish Inn. The failure of Nara Bank to promptly approve reallocation and/or to release the money in the reserve account, deprived me of the funds needed to finish the project on time. Had these delays not taken place I would have finished in time to obtain the certificate of occupancy by the deadline."

Plaintiff objected to the first sentence of paragraph 11 as irrelevant, lacking foundation, lacking personal knowledge, and as a legal contention rather than a statement of fact within Kohan's personal knowledge, and the trial court sustained those objections.

The first sentence of paragraph 11 is a legal conclusion, not a statement of fact. A declaration submitted in support of or in opposition to a motion for summary adjudication must cite evidentiary facts, not legal conclusions. (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 529.) The trial court did not abuse its discretion by sustaining plaintiff's objection to that portion of paragraph 11.

*Paragraph 12*

Paragraph 12 of the Kohan declaration states:

"12. Although construction was about 98% complete, I requested a further extension of the March 31, 2011 maturity date so that Nara Bank could audit the accounts, resolve the reallocation issues, and the remaining construction on the Project could be completed so that we could begin operating the hotel."

The trial court sustained plaintiff's objection to paragraph 12 as irrelevant. There are no evidentiary facts establishing any duty on the part of Nara Bank to further extend the maturity date of the loans, nor are there facts showing how the absence of such an extension relieved defendants of their liability under the guaranties. The trial court accordingly did not abuse its discretion by sustaining the objections to paragraph 12.

9

*Paragraphs 13 and 14*

Paragraphs 13 and 14 of the Kohan declaration state:

"13. Nara Bank advised me that it would extend the Maturity Date for 45 days to May 15, 2011 if Defendants paid an additional $45,000 and agreed to obtain the Certificate of Occupancy by May 6, 2011.

"14. Prior to investing another $45,000 and moving forward with additional construction, however, I again expressed my concerns to Nara Bank about the delays in funding disbursement requests, refusal to reallocate funds and the accounting discrepancies and the effect it would have on Spanish Inn's ability to complete construction and obtain the Certificate of Occupancy by May 6, 2011."

The trial court sustained plaintiff's objections to paragraphs 13 and 14 as irrelevant and in violation of the parol evidence rule.

The statements made in paragraphs 13 and 14 are irrelevant to defendants' obligations under the guaranties. It is undisputed that Nara Bank extended the maturity date of the loans to May 15, 2011. It is also undisputed that the loans were not repaid on that date. That Kohan expressed concerns about delays in funding and reallocation of funds during discussions with Nara Bank concerning the loan extensions is not relevant to any alleged breach by Nara Bank of any provision in the loan agreements or to defendants' obligations under the guaranties. The trial court did not err by sustaining the objections to paragraphs 13 and 14 of the Kohan declaration.

*Paragraph 22*

Paragraph 22 of the Kohan declaration states:

"22. $1 million of the $6 million under the [$6 million loan] was used to reimburse Nara Bank for a line of credit provided to Spanish Inn before the loan evidence by the [$6 million note]. Consequently the approximate principal balance of the [$1.3 million loan] is $750,000 and, certainly, nowhere near $1.1 million, as the moving papers contend."

The trial court sustained plaintiff's objections to paragraph 22 as lacking foundation and unintelligible. There is no explanation as to how a $1 million

10

reimbursement reduced the principal owed on the $1.3 million loan from $1.1 million to $750,000. Defendants offer no argument in response, other than "as the individual who dealt with Nara Bank on every occasion, Kohan would know how the loan proceeds were applied." The trial court did not abuse its discretion by sustaining the objection to paragraph 22.

## III. Summary adjudication

### A. *No triable issue of material fact*

The elements of a cause of action for breach of guaranty are (1) the guarantor guaranteed payment of indebtedness of a primary obligor; (2) default by the primary obligor; (3) notice to the guarantor of the default; (4) nonpayment of the debt by the guarantor; and (5) resulting damages. (*Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 819.)

In moving for summary adjudication of its breach of guaranty causes of action, plaintiff met its initial burden of producing evidence establishing the following undisputed facts: defendants guaranteed payment of the $6 million note and the $1.3 million note executed by Spanish Inn in favor of Nara Bank. Under the terms of the guaranties, defendants were obligated to make full and timely payment of Spanish Inn's obligations under the notes. Spanish Inn defaulted on the notes, and Nara Bank recorded a notice of default and election to sell under the deed of trust. Defendants defaulted on the guaranties by failing to pay any amounts owing under the notes. Plaintiff incurred damages totaling $4,981,792.79.

Because plaintiff met its initial burden of production, the burden shifted to defendants to make a prima facie showing that a triable issue of material fact exists. (*Aguilar, supra*, 25 Cal.4th at p. 845.) They failed to do so.

Defendants dispute the fact that they were obligated to pay Spanish Inn's indebtedness under the notes. They argue that Nara Bank's performance of its obligations was a condition precedent to their obligations under the guaranties. Defendants offer no evidence, however, to support that argument. In their responsive separate statement, defendants offer a single word in support of their position: "Legal."

11

This was insufficient to raise any triable issue that Nara Bank's performance was a condition precedent to defendants' obligations under the guaranties.

Defendants also failed to present any competent evidence that Nara Bank breached any of its obligations under the loan agreements. They accordingly failed to raise a triable issue regarding their obligations under the guaranties. (*Pacific Gas & Electric Co. v. City of Oakland* (2002) 103 Cal.App.4th 364, 371 [party opposing summary judgment must produce admissible evidence raising a triable issue of fact].)

Defendants dispute that the amount owed on the $1.3 million note was $1,374,384.09. They offer as evidence their own calculation of the principal owed on that note as exhibit C to the Kohan declaration. Because the trial court properly sustained plaintiff's objections to exhibit C, there is no competent evidence to support defendants' position on damages.

Given the absence of any competent evidence to create a triable issue of fact as to the enforceability of the guaranties, the trial court did not err by granting summary adjudication of the breach of guaranty causes of action in plaintiff's favor.

### B. Enforceability of waivers

Defendants contend the judgment must be reversed because the trial court erred as a matter of law by concluding that defendants had contractually waived the right to assert any defenses Spanish Inn could assert against Nara Bank. We find no legal error on the part of the trial court.

#### 1. Civil Code section 2809

Defendants claim that Civil Code section 2809 precludes enforcement of their waiver of Spanish Inn's defenses. Civil Code section 2809 provides: "The obligation of a surety must neither be larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation."

Defendants expressly waived the protections afforded by Civil Code section 2809. The guaranties each contain the following waiver: "Guarantor waives all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and

defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive." That waiver is valid and enforceable. (See *Bloom v. Bender* (1957) 48 Cal.2d 793, 804 [protections afforded by Civil Code section 2809 waivable even if language of guaranty agreement did not expressly mention that statute, so long as contractual language expresses such a waiver]; *River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1410 [guarantors who "absolutely and unconditionally" guaranteed debtor's liability under notes waived statutory protections under Civil Code section 2809].)

### 2. *Asmus v. Pacific Bell*

Defendants argue that the trial court's interpretation of the waiver provisions in the guaranties allowed Nara Bank to stop funding the loans arbitrarily, in violation of its obligations under the loan documents. They cite *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1 (*Asmus*) for the proposition that a contractual obligation is illusory if conditioned on some fact or event that is wholly under the promissor's control and left wholly to the promissor's own will and discretion.

*Asmus* did not involve a construction loan guaranty or a lender's obligations under a loan agreement. At issue in that case was whether an employer could unilaterally terminate a unilaterally adopted employment policy requiring employees to be retained so long as a specified condition did not occur. (*Asmus, supra*, 23 Cal.4th at pp. 5-6.) In holding that the employer could do so, the Supreme Court concluded that a unilateral contract, once formed, could be unilaterally modified or terminated by the employer. (*Id.* at p. 11.) *Asmus* is thus not only inapposite; it does not support defendants' proposition.

Defendants' argument also fails because they presented no competent evidence that Nara Bank had arbitrarily stopped funding the loans, and no evidence whatsoever that the bank's actions violated any provision of the loan agreements. There is accordingly no factual or legal basis for defendants' assertion that enforcement of the waiver provisions renders Nara Bank's obligations under the loan documents illusory.

13

### 3. *California Bank & Trust v. DelPonti*

Defendants cite *California Bank & Trust v. DelPonti* (2014) 232 Cal.App.4th 162 (*DelPonti*) as support for their argument that they were entitled to assert Nara Bank's breaches as a defense to enforcement of the guaranties, notwithstanding the waiver provisions contained in the guaranties. The lender in *DelPonti* loaned funds to the borrower to develop a 70-unit townhome project, and the borrower's principals guaranteed repayment of the loan. The construction project proceeded according to schedule for the first 18 months, but when the first phase was nearly complete, the bank stopped funding approved payment applications, preventing completion and sale of the phase one units, which in turn caused the borrower to default on the loan. (*Id.* at pp. 164-165.)

The bank reached an agreement with the borrower and guarantors to finish phase one so the units could be sold at auction and promised to pay the subcontractors if they discounted their bills and released any liens. Upon completion of the phase one units, however, the bank foreclosed against the borrower and sued the guarantors to collect the deficiency owed under the loan. (*DelPonti, supra*, 232 Cal.App.4th at p. 165.)

The matter proceeded to a court trial, at the conclusion of which the trial court found that the bank had breached its obligations under the loan agreement, thereby exonerating the guarantors. The trial court found that the bank had materially breached the loan agreement and engaged in willful misconduct by refusing to honor four payment applications that had been approved and by leading the guarantors to believe that they would be released from the guarantees if they performed the agreed upon tasks to complete the phase one units. On appeal, the bank did not challenge the trial court's factual findings, but argued that the guarantors had waived all their defenses under the guarantee agreements. (*DelPonti, supra*, 232 Cal.App.4th at p. 166.)

Applying "a rule of strict construction to contractual predefault waivers by the Guarantors," the appellate court in *DelPonti* held that a guarantor's waiver of defenses under Civil Code section 2856 is limited to legal and statutory defenses expressly set forth in the guaranty agreement and does not include a waiver of equitable defenses,

14

"such as unclean hands, where to enforce the guaranty would allow a lender to profit by its own fraudulent conduct." (*DelPonti, supra*, 232 Cal.App.4th at pp. 167-168.)

Even if the waivers in the guaranties at issue in this case did not include a waiver of equitable defenses, defendants failed to establish any equitable defense they or Spanish Inn could assert against Nara Bank. Unlike *DelPonti*, where there was substantial evidence of willful misconduct and material breaches of the loan agreements by the lender, there was no evidence in the instant case that Nara Bank had engaged in any willful misconduct or breached any obligation under the loan agreements. *DelPonti* is thus inapposite.

Defendants fail to establish any legal error by the trial court that would preclude enforcement of the guaranties.

## DISPOSITION

The judgment is affirmed. Plaintiff is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT