**PENSION TRUST FUND FOR OPERATING ENGINEERS, Plaintiff–Appellant,**

v.

**TRIPLE A MACHINE SHOP, INC., Defendant–Appellee.**

No. 90–15727.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1991.

Decided Aug. 26, 1991.

---

**2.** *Wilson v. Seiter, id.,* underscores this.

Robert M. Hirsch, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for plaintiff-appellant.

Stephen Thomas Davenport, Jr., Finkle, Davenport & Barsamian, Walnut Creek, Cal., for defendant-appellee.

Before HUG, SCHROEDER and WIGGINS, Circuit Judges.

HUG, Circuit Judge:

Appellant Pension Trust Fund for Operating Engineers ("Trust Fund") appeals the district court's grant of summary judgment in favor of appellee Triple A Machine Shop, Inc. ("Triple A"). Trust Fund brought this action alleging that Triple A violated sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, by failing to report timely and accurate pension trust fund contributions to Trust Fund. Trust Fund sought an audit of Triple A's books and records to determine the existence and amount of the alleged transgressions. Further, Trust Fund sought recovery of these contribution amounts, liquidated damages, interest, costs and attorneys' fees.

The district court granted Triple A's motion for summary judgment upon a determination that Trust Fund's entire action was barred by *res judicata*. The district court concluded that Trust Fund's Federal complaint concerned the same "primary rights" as its former Municipal court complaint, which alleged that Triple A "failed, neglected or refused to pay fringe benefit contributions as required by the [Master Agreement] and Trust Agreements." According to the district court, the same "primary right" involved in each case was the right to receive timely and accurate contribution reports and payments. Moreover, the district court found that the Federal complaint requested the same general relief sought in the Municipal court action, namely unpaid benefit contributions.

We have jurisdiction to hear this case under 28 U.S.C. § 1291. The district court's grant of summary judgment is reviewed *de novo*. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809

F.2d 626, 630 (9th Cir.1987). Because prior jurisdictional competency is a requirement for the application of *res judicata,* we reverse the judgment of the district court.

## I.

During the period of time from January 1, 1983 through June 30, 1986, Triple A was a signatory to a written collective bargaining agreement between itself and the Pacific Coast Mutual Trades District Council ("Union") known as the Pacific Coast Master Agreement ("Master Agreement"). The Master Agreement provided for the payment of trust fund contributions by Triple A on behalf of its operating engineer employees. Pursuant to Article 26 of the Master Agreement, Triple A was required to submit monthly reports and timely benefit contributions to Trust Fund. In addition, Article 4 of the Operating Engineers Trust Agreement ("Trust Agreement") provided for an audit of the employer's books and records in order for Trust Fund to determine whether benefits were being paid in accordance with the agreement. The Master Agreement expired on June 30, 1986.

On March 10, 1986, Trust Fund brought suit against Triple A in the San Francisco Municipal Court, alleging that Triple A "failed, neglected or refused to pay fringe benefit contributions as required by the [Master Agreement] and Trust Agreements." In that action, Trust Fund sought to recover liquidated damages and an interest penalty in the amount of $577.50. The liquidated damages and interest penalty were assessed by the Trust Fund as a result of late benefit contribution payments made by Triple A. Trust Fund also alleged in its complaint that it was "uncertain at this time whether additional sums are due or will become due from [d]efendants … and therefore pray leave to amend the Complaint to conform to the proof presented at trial regarding additional shortages." No effort to amend was made thereafter, thus, no claim was made for inadequate contributions; the claim was for liquidated damages and interest penalties for late contributions.

Prior to trial, the parties entered into settlement negotiations, and the matter was settled sometime prior to August 18, 1986. On June 3, 1987, Triple A paid the settlement amount of $433.13. Thereafter, Trust Fund filed a request for dismissal with prejudice of the Municipal court action. On June 19, 1987, the Municipal court entered a dismissal with prejudice of Trust Fund's "entire action."

In July 1987, Triple A closed its business in San Francisco's Hunters Point district, and reopened the business in Richmond, California. On November 16, 1987, the Union filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") against Triple A in connection with the move. On September 7, 1988, the NLRB issued a final decision upholding the termination of the Master Agreement between the parties.

Trust Fund initiated the present action against Triple A on March 16, 1989, seeking a final audit of Triple A for the period from January 1, 1983 through June 30, 1986. The purpose of this final audit was to permit the Trust Fund to determine whether all contributions had been paid for participants covered by the Plan. In its second amended complaint, Trust Fund alleged that Triple A had "failed, neglected, or refused to submit all monthly remittance reports of the number of hours of work performed by covered employees and to make fringe benefit contributions" to the various trust funds. The complaint alleged that these actions by Triple A constituted a violation of sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145.

The district court concluded that Trust Fund's Federal complaint concerned the same "primary right" as its Municipal court complaint, namely, the right to receive timely and accurate contribution reports and payments. Moreover, the district court found that the Federal complaint requested the same general relief sought in the Municipal court action, unpaid benefit contributions. Accordingly, upon Triple A's motion for summary judgment, the district court dismissed Trust Fund's action on

the ground that it was barred by *res judicata.*

## II.

█ Trust Fund contends the district court erred when it determined Trust Fund's present cause of action, pursuant to sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, and section 301 of the LMRA, 29 U.S.C. § 185, was barred on *res judicata* grounds by the prior state court action that had been dismissed with prejudice. Trust Fund challenges the district court's ruling on three bases: (1) the action involves different "primary rights;" (2) its right to an "exit audit" did not arise until after the NLRB made its determination that Triple A's duty to bargain had terminated; and (3) a state court judgment cannot act to bar claims over which federal courts have exclusive jurisdiction. Based on this circuit's ruling in *Eichman v. Fotomat Corp.,* 759 F.2d 1434 (9th Cir.1985), we agree that a state court judgment cannot act to bar claims over which federal courts have exclusive jurisdiction. As we reverse the district court's judgment on that basis, it is unnecessary to reach Trust Fund's other contentions.

█ The law is well-settled that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). *See Los Angeles Branch NAACP v. Los Angeles Unified School Dist.,* 750 F.2d 731, 736 (9th Cir.1984) (en banc), *cert. denied,* 474 U.S. 919, 106 S.Ct. 247, 88 L.Ed.2d 256 (1985); 28 U.S.C. § 1738 (providing that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of [the] State ... from which they are taken"). This principle applies without regard to whether the effect is one of claim preclusion or issue preclusion. *Los Angeles,* 750 F.2d at 736.

█ Under California law, a final judgment on the merits will preclude further litigation on the same cause of action. *See Slater v. Blackwood,* 15 Cal.3d 791, 126 Cal.Rptr. 225, 226, 543 P.2d 593, 594 (1975) (en banc). The claim preclusion aspect of *res judicata* will serve as a complete bar to the maintenance of a second suit between the same parties, if it is the same cause of action and the first suit concluded in a final judgment on the merits. *Los Angeles,* 750 F.2d at 737 (citing *Agarwal v. Johnson,* 25 Cal.3d 932, 160 Cal.Rptr. 141, 154, 603 P.2d 58, 72 (1979); *Slater,* 126 Cal.Rptr. at 226, 543 P.2d at 594). In addition, however, "[u]nder California preclusion law, in order for *res judicata* to apply to claims not raised in previous proceedings, the court rendering the prior judgment must have had jurisdiction to hear such claims."[1] *Eichman,* 759 F.2d at 1437 (citations omitted).

> Because federal antitrust claims are within the exclusive jurisdiction of the federal courts, the California court in *Eichman I* would have had no jurisdiction over Eichman's federal antitrust claims. Therefore, applying California *res judicata* principles, the prior California suit cannot preclude Eichman's federal action.

*Id.* (citing *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 377, 381, 105 S.Ct. 1327, 1330, 1332, 84 L.Ed.2d 274 (1985)). When all these requirements are met, issues that were litigated, or that might have been litigated as part of the cause of action, are barred.

█ Specifically, Trust Fund's second amended complaint in this action alleged that Triple A's "failure, neglect, or refusal to submit the monthly reports and fringe

---

1. Triple A asserts that Trust Fund is raising the requirement of prior jurisdictional competency for the first time on appeal. Even assuming this to be true, it is clearly within our discretion to decide whether we will consider a legal issue for the first time on appeal. *See, e.g., Wind Power Sys., Inc. v. Cannon Fin. Group, Inc. (In re Wind Power Systems, Inc.),* 841 F.2d 288, 290 n. 1 (9th Cir.1988); *Romain v. Shear,* 799 F.2d 1416, 1419 (9th Cir.1986) (per curiam), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987).

benefit contributions pursuant to the ... agreements constitute a violation of ERISA Section 515 (29 U.S.C. Section 1145)." [2] The complaint sought an Order directing and enjoining Triple A to permit an audit of its books and records from January 1, 1983 to June 30, 1986. Also, it sought an Order directing and permanently enjoining Triple A to submit to Trust Fund all reports and contributions due and owing, plus interest, liquidated damages, attorneys' fees and costs as provided for by sections 502(a)(3) and (g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and (g)(2).[3]

As to Trust Fund's claimed violation of sections 502(a)(3) and (g)(2), section 502(e) of ERISA provides in pertinent part that: "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have *exclusive jurisdiction* of civil actions under this subchapter brought by ... a ... fiduciary." 29 U.S.C. § 1132(e)(1) (1988) (emphasis added). Section 502(e), by its terms, vests exclusive jurisdiction in the federal courts for the suit brought by Trust Fund under sections 502(a)(3) and (g)(2) of ERISA. Consequently, the California state court that heard Trust Fund's previous proceeding could not have had jurisdiction to hear these claims. Accordingly, as the requirement for the application of *res judicata* of prior jurisdictional competency was not met

in this case, we need not determine whether the other requirements were present. Thus, the district court erred when it determined that Trust Fund's action in this case was barred on *res judicata* grounds by the prior state court action that had been dismissed with prejudice.

## III.

Finally, Triple A contends that, notwithstanding that the California state court did not have prior jurisdictional competency, collateral estoppel will bar the Trust Fund from relitigating the issues determined in the Municipal court action. According to Triple A, collateral estoppel should prevent the Trust Fund from relitigating the factual issue of whether Triple A owes Trust Fund any contributions, liquidated damages, interest, attorneys' fees or costs for the time period up to June 30, 1986.

We recognize that, in certain instances, *Eichman* permits collateral estoppel effect to be given to specific findings of fact made in a prior state court adjudication, notwithstanding that the state court did not have prior jurisdictional competency. 759 F.2d at 1437. *See also Hirst v. State of California,* 770 F.2d 776, 777–78 (9th Cir.1985) (although jurisdiction over Title VII claims rests exclusively in the federal courts, the plaintiff was held to be precluded under the doctrine of collateral

**2.** Section 515 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (1988).

**3.** Section 502(a)(3) provides:

A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (1988).

Section 502(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce

section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26.

29 U.S.C. § 1132(g)(2) (1988).

estoppel from relitigating the issue of discrimination via a Title VII action). "California applies collateral estoppel when: (1) the issue decided in the prior adjudication is identical to the issue presented in the second action; (2) there was a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Hirst*, 770 F.2d at 778 (citation omitted). Because the last two requirements have undisputedly been met, we address only the first requirement.

■ Triple A relies on *Torrey Pines Bank v. Superior Court*, 216 Cal.App.3d 813, 265 Cal.Rptr. 217 (1989), to argue that dismissal with prejudice of the Municipal court complaint was a factual determination that Triple A does not owe shortages or liquidated damages in any amount up to the date of the June 19, 1987 dismissal. According to Triple A, Trust Fund is collaterally estopped from relitigating in federal court the issue of delinquent contributions. We disagree. In *Torrey Pines*, the California court merely concluded that a dismissal with prejudice constituted a common law "retraxit" and determination on the merits implicating the principles of *res judicata. See* 265 Cal.Rptr. at 220–21.

The *Torrey Pines* court simply relied on the well-established legal principle that *res judicata* will prevent relitigation of issues that were previously adjudicated in earlier proceedings, and applies it to a final judgment on the merits in the form of a voluntary dismissal. *Id.* at 220–22. This case does not remove the requirement that the issue decided in the prior adjudication be identical to the issue presented in the second action. That requirement was met in *Torrey Pines* when the defendant in the second action attempted to assert affirmative defenses that involved the same legal issues as those alleged by him as a plaintiff in the first cause of action, which was voluntarily dismissed with prejudice. *Id.* at 220.

Here, as discussed, the Municipal court complaint sought to recover liquidated damages and interest due for Triple A's failure to make timely benefit contribution payments. The cause of action was filed, presumably under section 301 of LMRA, which authorizes concurrent jurisdiction in the state court, pursuant to provisions in the Trust Agreements, which provided for liquidated damages and interest on all delinquent contributions. By contrast, the Federal complaint involved allegations of injury to entirely different interests, namely allegations of violations of provisions in ERISA for failure to submit all monthly remittance reports and benefit contributions and for failure to permit an audit. While the time periods involved with each complaint are overlapping, there can be no collateral estoppel as the issues that were decided in the Municipal court adjudication are clearly not identical to the issues involved in the Federal complaint. Also, once again, we note that the rights created pursuant to ERISA that would arise from the exit audit were not previously determined by the Municipal court complaint. Although Trust Fund reserved its right to amend that complaint to include additional sums, this was never done. Consequently, these issues were never actually litigated and Triple A may not now look to collateral estoppel to prevent the resolution of these issues.

Accordingly, the judgment of the district court must be reversed.

REVERSED.