970 F.2d 1132
 141 L.R.R.M. (BNA) 2305, 122 Lab.Cas. P 10,304
 UNITED STATES of America, Plaintiff-Appellee,
Charles M. Carberry, Appellee,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO; the
Commission of La Cosa Nostra; Anthony Salerno, also known
as Fat Tony; Matthew Ianniello, also known as Matty the
Horse; Nunzio Provenzano, also known as Nunzi Pro; Anthony
Corallo, also known as Tony Ducks; Salvatore Santoro, also
known as Tom Mix; Christopher Furnari, Sr., also known as
Christie Tick; Frank Manzo; Carmine Persico, also known as
Junior, also known as The Snake; Gennaro Langella, also
known as Gerry Lang; Philip Rastelli, also known as Rusty;
Nicholas Marangello, also known as Nicky Glasses; Joseph
Massino, also known as Joey Messina; Anthony Ficarotta,
also known as Figgy; Carmen Parise, Appellant.
Eugene Boffa, Sr.; Francis Sheeran; Milton Rockman, also
known as Maishe; John Tronolone, also known as Peanuts;
Joseph John Aiuppa, also known as Joey O'Brien, also known
as Joe Doves, also known as Joey Aiuppa; John Philip
Cerone, also known as Jackie the Lackie, also known as
Jackie Cerone; Joseph Lombardo, also known as Joey the
Clown; Angelo Lapietra, also known as the Nutcracker;
Frank Balistrieri, also known as Mr. B; Carl Angelo Deluna,
also known as Toughy; Carl Civella, also known as Corky;
Anthony Thomas Civella, also known as Tony Ripe; General
Executive Board, International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America; Jackie
Presser, General President; Weldon Mathis, General
Secretary-Treasurer; Joseph Trerotola, also known as Joey
T., First Vice President; Robert Holmes, Sr., Second Vice
President; William J. McCarthy, Third Vice President;
Joseph W. Morgan, Fourth Vice President; Edward M. Lawson,
Fifth Vice President; Arnold Weinmeister, Sixth Vice
President; John H. Cleveland, Seventh Vice President;
Maurice R. Schurr, Eighth Vice President; Donald Peters,
Ninth Vice President; Walter J. Shea, Tenth Vice President;
Harold Friedman, Eleventh Vice President; Jack D. Cox,
Twelfth Vice President; Don L. West, Thirteenth Vice
President; Michael J. Riley, Fourteenth Vice President;
Theodore Cozza, Fifteenth Vice President; Daniel Ligurotis,
Sixteenth Vice President; and Salvatore Provenzano, also
known as Sammy Pro, Former Vice President, Defendants,
 No. 1359, Docket 91-6298.
 United States Court of Appeals,
Second Circuit.
 Argued June 1, 1992.
Decided July 30, 1992.
 
 John R. Climaco (Paul S. Lefkowitz, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., Inc., Cleveland, Ohio, Roy Barnes, Wendell Shepherd, Roy Barnes, P.C., Elmsford, N.Y., of counsel), for appellant.
 Steven C. Bennett, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Ping C. Moy, Asst. U.S. Atty., S.D.N.Y., of counsel), for plaintiff-appellee.
 Charles M. Carberry, New York City, for appellee.
 Before OAKES, Chief Judge, NEWMAN and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Appellant ("Parise") is the former Secretary-Treasurer of International Brotherhood of Teamsters ("IBT") Local 473, and the former President of Joint Council 41, an IBT affiliate. Both organizations are headquartered in Cleveland, Ohio. He asks us to review an order of the United States District Court for the Southern District of New York (David N. Edelstein, Judge ), upholding disciplinary sanctions imposed on him. See United States v. International Bhd. of Teamsters, 777 F.Supp. 1133 (S.D.N.Y.1991) ["Parise I" ]. For the reasons set forth below, we affirm the order of the district court.
 
 BACKGROUND
 
 2
 The case law within our circuit swells with decisions emanating from the Teamsters Litigation. Our earlier decisions exhaustively discuss the genesis of the Consent Decree settling the government's charges against the IBT and its officials. See United States v. International Bhd. of Teamsters, 931 F.2d 177, 180-81 (2d Cir.1991); United States v. International Bhd. of Teamsters, 905 F.2d 610, 612-13 (2d Cir.1990) [hereafter Friedman & Hughes]. Accordingly, we need recount only those provisions of the Consent Decree that are necessary to understand the current dispute.
 
 
 3
 The Consent Decree provided for the appointment of three officers: an Elections Officer (not involved in this appeal), an Investigations Officer, and an Independent Administrator. The Investigations Officer investigates and brings disciplinary charges against allegedly corrupt IBT members. The Independent Administrator conducts hearings on the charges, and determines whether sanctions are warranted. Under Paragraph 12(A) of the Consent Decree, the decisions of the Independent Administrator are reviewed by the district court.
 
 
 4
 Pursuant to the Consent Decree, the Investigations Officer served charges on Parise on July 30, 1990. The charges accused Parise of bringing reproach upon the IBT, in violation of the IBT constitution, by (1) assaulting, threatening and harassing Jerry Jones, a Local 473 member; and (2) refusing to testify about his involvement in a beating Jones suffered at the hands of Frank Costanzo, another Local 473 member.
 
 
 5
 The Independent Administrator scheduled a hearing on the charges for December 18, 1990. Before the hearing began, however, Parise and the Investigations Officer signed a settlement agreement to resolve the charges (the "Proposed Agreement"). Under the Proposed Agreement, Parise would be suspended from the IBT for three months, beginning on January 8, 1991.
 
 
 6
 In the Proposed Agreement, Parise stated, in two paragraphs that lie at the heart of this appeal, his understanding of the authority of the Independent Administrator and the district court:
 
 
 7
 7. I agree that this agreement will be submitted to the Independent Administrator for his review and approval. If approved by the Independent Administrator, I understand he will submit it to the district court for that court to enter as an order.
 
 
 8
 8. I understand the Investigations Officer makes no representation as to the determination of the Independent Administrator or the court with respect to this agreement.
 
 
 9
 Without holding a hearing or making any factual findings, the Independent Administrator approved the Proposed Agreement. He then submitted the Agreement to the district court for its approval. The court refused to do so, advising the Independent Administrator that "In light of the severity of the charges against Mr. Parise, I find the terms of the ... agreement unacceptable. I am returning the ... agreement unapproved."
 
 
 10
 With the agreement thus unravelled, the Independent Administrator scheduled a hearing on the charges for February 25, 1991. At Parise's request, the hearing was rescheduled for April 9, 1991. Meanwhile, although he was aware that the district court had rejected the Agreement, Parise voluntarily relinquished his IBT offices and membership on January 8, 1991. He resumed these positions three months later, on April 9, 1991.
 
 
 11
 The scheduled hearing went forward on April 9, and the Investigations Officer presented a compelling case against Parise. Perhaps the most damaging evidence on the first charge were the tape and transcript of a conversation between Parise and fellow union member Jerry Jones.[1] Upset with Jones' alleged attempts to steer an upcoming IBT election free from his influence, Parise fired a verbal fusillade at Jones.[2] In various diatribes laced with colorful, macho expletives, Parise threatened to "bust [Jones'] head" and "have somebody give [Jones] a ... beating." He further told Jones that he would "never work again," and would not "get a ... job anyplace Teamsters are at." Parise concluded "[T]he day after [the election] win, lose, or draw you're fucked and I want you to know it."
 
 
 12
 The Investigations Officer presented convincing evidence on the second charge as well. Specifically, he introduced the transcript of a deposition in which Parise had relied on his Fifth Amendment privilege against self-incrimination to refuse to testify about Frank Costanzo's assault on Jones.[3]
 
 
 13
 Beginning his defense case, Parise's counsel moved to suspend the hearing, arguing that, despite the district court's disapproval of the Proposed Agreement, an associate of the Independent Administrator told him that the Agreement had resolved all charges against Parise. Counsel claimed that the associate told him that the district court's approval would be required only if the court sought to impose contempt sanctions when Parise later failed to comply with the Agreement. The Independent Administrator expressly rejected this claim:
 
 
 14
 It has never been my position that Judge Edelstein's signature was not necessary for approval of any agreements that have been entered into by the investigations officer and counsel for the respondent in any charge and there have been many of them. That's why I forward them automatically to Judge Edelstein.
 
 
 15
 * * * * * *
 
 
 16
 I have carried the notion right from the beginning that what I do has to then go to Judge Edelstein for approval and until he approves it it's a nullity.
 
 
 17
 Accordingly, the Independent Administrator denied counsel's motion and ordered the hearing to continue.
 
 
 18
 Parise then testified. Unable to challenge the tape and transcript of his philippic against Jones, he delivered ad hominem attacks on Jones, claiming that he had "urinated off the docks" in Cleveland, "antagonized people" and "spen[t] a great deal of ... time in saloons and coming back from lunch half tanked and just bothering everybody and anybody." Parise also attempted to downplay his failure to testify at the deposition, claiming that this decision was made "against [his] better judgment [because he] listened to [his] lawyers." He also testified that he did not know about Costanzo's attack on Jones until the day after the incident.
 
 
 19
 The Independent Administrator determined that the Investigations Officer's evidence "conclusively proved" that Parise had "violently threatened" Jones, and that Parise would likely have carried out the threats had Jones not recorded them. He further found that Parise's invocation of his Fifth Amendment privilege against self-incrimination at his deposition "precluded the Investigations Officer's authorized scrutiny into possible corrupt and dishonest activities in Parise's local." He ordered Parise suspended for twenty-four months from the IBT and its affiliates, but allowed Parise credit for his self-imposed three-month suspension. Finally, he determined that because Parise had committed acts of union misconduct, Local 473 could not pay his legal fees to defend the charges.
 
 
 20
 Parise sought review of the Independent Administrator's decision in the district court. On October 24, 1991, the district court issued an order finding that there was "overwhelming evidence" to support the charges against Parise, and an "ample basis" to impose a twenty-four month suspension. Parise I, 777 F.Supp. at 1138. The court, therefore, affirmed the Independent Administrator's decision, and Parise now appeals.
 
 
 21
 Parise renews his claim that the Proposed Agreement took effect despite the district court's explicit rejection of it. Alternatively, he contends that the district court erred in refusing to approve the Proposed Agreement. Finally, he argues that the district court erred in affirming the Independent Administrator's decision suspending him from IBT membership for twenty-four months, and preventing Local 473 from paying his attorney's fees.
 
 DISCUSSION
 I. The Effect of the Proposed Agreement
 
 22
 Parise claims that, because of his settlement with the Investigations Officer, the district court was not empowered to reject the Proposed Agreement. In his view, the Proposed Agreement became effective when the Independent Administrator signed it; and it was thereafter submitted to the district court for the sole purpose of being "so ordered."
 
 
 23
 Parise relies upon Paragraph 7 of the Proposed Agreement:
 
 
 24
 I agree that this agreement will be submitted to the Independent Administrator for his review and approval. If approved by the Independent Administrator, I understand he will submit it to the District Court for that court to enter as an order.
 
 
 25
 (emphasis added). Parise interprets this paragraph to mean that while the Independent Administrator could review the Proposed Agreement, the district court's role was to "rubber stamp" it. We disagree.
 
 
 26
 Paragraph 8 of the Proposed Agreement explodes Parise's argument:
 
 
 27
 I understand the Investigations Officer makes no representation as to the determination of the Independent Administrator or the court with respect to this agreement.
 
 
 28
 Paragraph 8 is meaningless unless the court is empowered to make a "determination." We must avoid an interpretation of an agreement that renders one of its provisions superfluous. See In re United Merchants & Mfrs., Inc., 623 F.2d 804, 807 (2d Cir.1980) (per curiam ); see also Restatement (Second) of Contracts § 203(a). Thus, there can be no question that Paragraph 8 authorized the district court to review the Proposed Agreement.
 
 
 29
 Parise fortifies his interpretation of Paragraph 8 with the claim that an associate of the Independent Administrator said that he too believed that the Agreement did not require the district court's approval. The Independent Administrator found that no such representation had been made, and he reiterated this finding in his order imposing sanctions against Parise.
 
 
 30
 Even if the representation had been made, our conclusion would be unaffected. The interpretation of a written agreement begins with an examination of its language. When an agreement is clear and unambiguous, courts will generally not consider extrinsic evidence of its meaning. See Sharma v. Skaarup Ship Management Corp., 916 F.2d 820, 827-28 (2d Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991). In our view, the Proposed Agreement clearly and unambiguously permitted the district court to review it.
 
 
 31
 II. The District Court's Review of the Proposed Agreement
 
 
 32
 A court must scrutinize a proposed settlement before giving it a judicial imprimatur. Cf. City of Detroit v. Grinnell Corp., 495 F.2d 448, 468 (2d Cir.1974) (district court's evaluation of a proposed class action settlement "requires an amalgam of delicate balancing, gross approximations and rough justice"). The district court must ensure that the agreement "does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence." United States v. City of Miami, 664 F.2d 435, 441 (5th Cir.1981). We hold that the district court appropriately exercised its authority in refusing to approve the Proposed Agreement.
 
 
 33
 The Investigations Officer's charges against Parise were serious. They accused Parise of assaulting, harassing, and threatening to beat Jones, and refusing to testify about Costanzo's attack on Jones. Judge Edelstein, who has scrupulously overseen the Teamsters Litigation since its inception and has ruled on scores of the Independent Administrator's applications of the Consent Decree, was in the best position to determine whether the Proposed Agreement imposed a punishment commensurate with the charges against Parise. We see no reason to disturb the district court's decision that the severity of the charges against Parise required a suspension greater than the three months envisioned in the Proposed Agreement.
 
 
 34
 Parise also contends that, in reviewing the Proposed Agreement, the court failed to defer to the "findings" of the Independent Administrator, as required by our decision in Friedman & Hughes. The difficulty with this argument, however, is that it rests on the false premise that the Independent Administrator actually made "findings" when he approved the Proposed Agreement. There are no such findings in the record. The Proposed Agreement itself does not refer to any "findings." Nor did Parise make any admissions in the Proposed Agreement that could be construed as findings. Thus, because the Independent Administrator did not make any findings in conjunction with the Proposed Agreement, the district court owed no deference to the Administrator's decision to approve the Agreement.
 
 
 35
 III. The Decision of the Independent Administrator
 
 
 36
 The Independent Administrator concluded that the evidence against Parise warranted a twenty-four month suspension from the IBT. He further ruled that Local 473 could not pay Parise's attorney's fees for his defense. The district court affirmed the Independent Administrator's decision in its entirety. On appeal, Parise claims that the evidence against him did not warrant such a severe punishment. Once again, we are not persuaded.
 
 
 37
 The district court must give "great deference" to the decisions of the Independent Administrator. Friedman & Hughes, 905 F.2d at 616. Consistent with Friedman & Hughes, the district court reviewed the Independent Administrator's decision to determine whether it was arbitrary or capricious, and concluded that it was not.
 
 
 38
 Our standard of review is not so clearly defined. As we recently recognized, the Consent Decree offers no explicit guidance. See United States v. International Bhd. of Teamsters, 964 F.2d 1308, 1311 (2d Cir.1992) [hereafter "Cimino "]. In Cimino, we declined to cut a standard of appellate review from the whole cloth presented by the Consent Decree, and noted that Friedman & Hughes permitted us to affirm a district court decision that is supportable under "any reasonable standard of review." Cimino, at 1311 (citing Friedman & Hughes, 905 F.2d at 616-617). The district court's decision here certainly fell within the realm of reason. Thus, we again leave the question of the precise standard of appellate review to another day.
 
 
 39
 Parise's threats of physical and economic harm resonated throughout his conversation with Jones. And, as the Independent Administrator noted after listening to Parise testify at the April 9 hearing, Parise was not a man given to idle threats, and would likely have harmed Jones if the conversation were not taped. Moreover, prior to the April 9 hearing, Parise had refused to testify about Costanzo's assault on Jones. Parise did not contest any of the Investigations Officer's evidence against him. In sum, there was a plethora of evidence to support the charges against Parise, and a sufficient basis to suspend him from the IBT for twenty-four months.
 
 
 40
 In challenging his suspension, Parise contends that the Independent Administrator should have imposed a punishment closer to the three-month suspension provided in the Proposed Agreement. We disagree. The Independent Administrator based his approval of the Proposed Agreement on factors different from those that led him to determine that Parise deserved a suspension of twenty-four months. The Independent Administrator did not review the evidence against Parise before the April 9 hearing. He was not given the tape and transcript of Parise's threats against Jones until the very morning of the April 9 hearing. After considering the damning evidence against Parise, the Independent Administrator determined that a harsher sanction was warranted than that delineated in the Proposed Agreement.
 
 
 41
 Finally, the Independent Administrator did not err in ordering Local 473 not to pay Parise's attorney's fees. A union official may obtain reimbursement of his legal expenses only when his actions inure to the benefit of the union. See, e.g., Morrissey v. Segal, 526 F.2d 121, 127 (2d Cir.1975); United States v. Local 1804-1, Int'l Longshoremen's Ass'n, 732 F.Supp. 434, 436 (S.D.N.Y.1990). Here, the Independent Administrator found that Parise had brought reproach upon the IBT, and thus had violated the IBT constitution. In so doing, Parise obviously acted in a manner that did not inure to the benefit of the IBT.
 
 CONCLUSION
 
 42
 We hold that the district court (1) had the authority to review the Proposed Agreement, and (2) did not err in withholding approval. We also hold that the district court did not err in (3) affirming the Independent Administrator's decision suspending Parise from IBT membership for twenty-four months, and (4) preventing Local 473 from paying Parise's attorney's fees.
 
 
 43
 AFFIRMED.
 
 
 
 [1]
 After Parise allegedly threatened him several times, Jones began to carry a tape recorder to capture Parise's invectives. The tape and transcript introduced at the hearing were the products of Jones' initiative. Parise does not contest the authenticity or the accuracy of either piece of evidence
 
 
 [2]
 Excerpts from Parise's tirade are reported in the district court's opinion, and convey the flavor of Parise's vitriol. See Parise I, 777 F.Supp. at 1136-37
 
 
 [3]
 At the time of the deposition, Parise was under indictment in the United States District Court for the Northern District of Ohio for his participation in the Costanzo attack. On June 10, 1991, Parise pleaded guilty to one count of violating 29 U.S.C. § 530, and was sentenced to one year of probation and a $1000 fine