Helen O'HARA, Plaintiff,

v.

TEAMSTERS UNION LOCAL # 856, an unincorporated labor organization; Bento Leal, Secretary–Treasurer of Teamsters Local 856, and Catherine Leal, individually and as an Officer of Local 856, Defendants.

Bento LEAL and Catherine Leal, Cross–Claimants–Appellees,

v.

TEAMSTERS UNION LOCAL # 856, Cross–Defendant–Appellant.

TEAMSTERS UNION LOCAL # 856, Cross–Claimant–Appellant,

v.

Bento LEAL and Catherine Leal, Cross–Defendants–Appellees.

Helen O'HARA, Plaintiff,

v.

TEAMSTERS UNION LOCAL # 856, an unincorporated labor organization, Defendant–Cross–Defendant– Cross–Claimant–Appellant,

v.

Bento LEAL, individually and as Secretary–Treasurer of Teamsters Local 856; Catherine Leal, individually and as an Officer of Local 856, Defendants–Cross–Defendants–Cross–Claimants–Appellees.

Nos. 97–15418, 97–16145.

United States Court of Appeals, Ninth Circuit.

Argued April 13, 1998.

Decided July 27, 1998.

David A. Rosenfeld, Stanley S. Mallison, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for defendant-cross-claimant-appellant.

Lee Ann Huntington, Lewis D. Barr, Morgenstein & Jubelirer, San Francisco, California, for defendants-cross-claimants-appellees.

Before: SNEED and TROTT, Circuit Judges, and WALLACH,* Judge.

SNEED, Circuit Judge:

Teamsters Local 856 appeals the district court's summary judgment in favor of former union officials Bento and Catherine Leal in the Leal's action for indemnification arising out of an underlying age discrimination/wrongful termination action brought by former union employee Helen O'Hara against the union and the Leals. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Helen O'Hara ("O'Hara") began working as a bookkeeper in San Francisco for Teamsters Local 856 ("union") in 1989. At that time, Bento Leal was the union Secretary/Treasurer and Chief Executive Officer. Leal's daughter, Catherine Leal, was the union's Office Coordinator and O'Hara's immediate supervisor.

In October 1990, O'Hara met with court-appointed federal agents who were investigating Teamster locals pursuant to a settlement agreement between the national union and the United States, entered into in the Southern District of New York. *United States v. Int'l Bhd. of Teamsters,* 708 F.Supp. 1388 (S.D.N.Y.1989). O'Hara met with the agents a second time in February 1991. O'Hara allegedly told investigators that Catherine Leal had forced her to sign an attendance sheet for a union meeting she did not attend, that O'Hara had been denied vacation pay, that Catherine Leal had received extra vacation time, and that O'Hara

had been coerced into making contributions to the union.

Soon after the first meeting with investigators, O'Hara alleges that the Leals began to harass her. She claims that the Leals falsely accused her of improperly removing several weeks of Catherine Leal's vacation time from union records and of being disloyal. O'Hara also claims that the Leals began to transfer O'Hara's duties to other employees, and instructed her to keep her office door open at all times and to spend no time at the local office other than working hours. O'Hara claims she believed the Leals were harassing her because she was providing evidence of their wrongdoing to federal investigators.

The Leals deny they harassed O'Hara, instead claiming she was a problem employee. They claim she was "counseled" on several occasions, and present evidence of at least one warning meeting and disciplinary letter in September 1990. The Leals claim O'Hara failed to keep up with her basic clerical duties and made long personal telephone calls during office hours. Others, including Michael McLaughlin ("McLaughlin"), the union member who later replaced Ben Leal as union Secretary/Treasurer, also complained about O'Hara. Ben Leal claims that the numerous problems eventually forced him to fire O'Hara in early April, 1991.

On April 1, 1992, O'Hara filed a lawsuit in the Northern District of California against the Leals and the union, alleging violations of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411 and 529, (sections which protect a union member's right to freely express his or her views without fear of discipline from the union); breach of the union's bylaws; tortious discharge in violation of public policy; age discrimination; violation of the covenant of good faith and fair dealing; and emotional distress. After the O'Hara suit was filed, the Leals retained the union's lawyer. This lawyer represented both the Leals and the union in the pretrial proceedings and preliminary settlement negotiations with O'Hara that took place over a year and a half period

---

* Honorable Evan J. Wallach, Judge of the United States Court of International Trade, sitting by designation.

following the filing. The union filed an answer that denied any wrongdoing by the Leals, and in July 1993 filed a motion for summary judgment, claiming that O'Hara was fired for reasons wholly unrelated to her meetings with federal investigators and again denying all accusations of illegality or wrongdoing. The same month, the district court granted the union's motion for summary judgment in part and dismissed some of O'Hara's claims while denying summary judgment on others.

Ben Leal was voted out of office during union elections in December 1993. At that time, the new Secretary/Treasurer, McLaughlin, fired Catherine Leal and immediately took charge of the O'Hara lawsuit. McLaughlin claims he believed that the Leals had harassed O'Hara, and that she was fired for whistleblowing activities. McLaughlin claims that he feared that he would violate his fiduciary duty to the union under federal law if he continued to allow the union to pay for the Leals' defense. Therefore, after discussions with the union's lawyer (a meeting held prior to McLaughlin's swearing-in as the local's leader), it was decided that the lawyer who had represented both the Leals and the union up to this point would withdraw. The union hired a new attorney to represent the union exclusively, leaving the Leals without union-paid representation.

Concurrent with these events, the union filed a suit against their two insurance companies on behalf of the union and the Leals, seeking to obtain payment on policies that could be used to defend or settle the O'Hara claims. The lawsuit was financed exclusively by the union. As part of the suit, the union asserted that the Leals had acted "within the scope of (their) employment" with regard to O'Hara, and thus were covered under the terms of the insurance policies. The union settled with the insurance companies in late 1994. Each company contributed $15,000 for purposes of settling the O'Hara suit.

In April 1995, all parties reached a settlement in the O'Hara case. O'Hara agreed to dismissal of all her claims, with prejudice, and neither the Leals nor the union admitted any wrongdoing.

Just prior to the O'Hara settlement, the Leals filed a demand with the union for indemnification of their costs incurred in defending against the O'Hara suit. When this request was refused (still prior to the finalization of the O'Hara settlement), the Leals filed a cross-claim against the union for indemnification. The union responded with a cross-claim of its own, seeking indemnification from the Leals for expenses incurred in defending and settling the O'Hara claims. The union claimed it was entitled to indemnity (and owed nothing to the Leals) because the Leals' actions regarding O'Hara had been illegal.

In early December, 1994, the district court granted Catherine Leal's motion for summary judgment on her cross-claim for indemnity, citing California Labor Code § 2802 and awarding her expenses and attorney's fees incurred in defending and settling the O'Hara suit. Catherine Leal then filed a motion seeking to obtain fees and expenses incurred in enforcing her § 2802 cross-claim against the union. The district court referred her motion to a magistrate judge, who held hearings and received briefs on the issue. After considering the magistrate's report the district court awarded Catherine Leal attorney's fees and expenses incurred in both the O'Hara action and the cross-claim against the union for indemnity. The district court also dismissed the union's claim for indemnity and later granted Ben Leal's motion for summary judgment on his claim for indemnity under § 2802, awarding him the fees and expenses incurred both on the O'Hara claim and in enforcing his indemnity claim against the union. Finally, in April 1997, the district court awarded the Leals fees incurred in defending against the union's cross-claim.

In the course of these proceedings, the district court held that the union was judicially estopped from attempting to escape indemnity by claiming the Leals had acted illegally when the union had previously claimed, for purposes of the suit against the insurance companies, that the Leals had acted "within the scope of employment." The court also rejected the union's claim that fees and expenses incurred in enforcing a right to

indemnity under Cal. Labor Code § 2802 and defending the union's cross-claim for indemnity were unrecoverable. In addition, the district court rejected the union's claim that Cal. Labor Code § 2802, upon which all the indemnification awards were based, is preempted by federal law. This timely appeal ensued.

We find that while the district court may have erred in holding that the union is judicially estopped, the union's opposition to the Leals' indemnity claim is nevertheless without merit because O'Hara's claims against the Leals were "unfounded" as a matter of law. In addition, we find that the union's cross-claim for indemnity is barred by the clear language of the relevant California statute.

Moreover, we agree with the district court that the Leals are entitled to attorney's fees incurred in pursuing their cross-claim against the union and defending against the union's claim. In so concluding, we also agree that § 2802 is not preempted by federal law.

## II.

### STANDARD OF REVIEW

 The district court's grant of summary judgment is reviewed de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). This court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant law. *Id.* An award of attorney's fees made pursuant to state law is reviewed for an abuse of discretion. *Apollo Group, Inc. v. Avnet, Inc.,* 58 F.3d 477, 482 (9th Cir.1995). Whether denial of attorney's fees under state law was proper is a question of law reviewed de novo. *Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot,* 36 F.3d 785, 799 (9th Cir.1993). Finally, the district court's decision regarding preemption is reviewed de novo. *Espinal v. Northwest Airlines,* 90 F.3d 1452, 1455 (9th Cir.1996). This court has jurisdiction pursuant to 28 U.S.C. § 1291 over the appeal of a final decision of the district court.

## III.

### DISCUSSION

#### A. The Leals' Claim for Indemnification Under Section 2802

California law requires an employer to indemnify an employee (1) "for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties," or (2) for expenses incurred because of the employee's "obedience to the directions of his employer, even though unlawful," unless the employee believed, at the time he followed the directions, that the directions were unlawful. Cal. Labor Code § 2802. Allowable expenses under the statute have been held to include attorney's fees. *Douglas v. Los Angeles Herald–Examiner,* 50 Cal.App.3d 449, 123 Cal.Rptr. 683, 685 (1975). The union argues that neither prong of § 2802 applies to the Leals' claim for indemnification. Further, it argues that the district court erred in finding that because the union—for purposes of obtaining a favorable settlement with its insurance companies—had previously claimed that the Leals acted "within the scope" of their employment, it is now estopped from claiming that the Leals' actions were illegal and not "in discharge of (their) duties."

#### 1. Judicial Estoppel

 The union is correct in claiming that the district court's rationale is flawed. A party is judicially estopped from asserting a position in the course of litigation only if that position is inconsistent or incompatible with an earlier position. *Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597, 600–01 (9th Cir.1996). It would appear that under California law, the union could consistently assert both that the Leals were acting "within the scope" of their employment for insurance purposes but also that they were acting illegally and thus not in "discharge of (their) duties" under § 2802.

 An employee may act "within the scope of employment" even if the given act is illegal and not in the employer's interests. *See Mary M. v. City of Los Angeles,* 54 Cal.3d 202, 285 Cal.Rptr. 99, 102, 814 P.2d 1341, 1344 (1991) (police officer who rapes

woman who he stopped for a traffic violation has acted "within the scope of employment" because although the act is uncommon, it is "broadly incidental" to the enterprise of law enforcement); *Carr v. Wm. C. Crowell Co.,* 28 Cal.2d 652, 654, 171 P.2d 5, 6–7 (1946) (employee who threw hammer at coworker's head was acting "within the scope of employment"). Such a broad definition of "within the scope of employment" ensures that third parties injured by an employee have a remedy against a party that is more likely to be able to pay a judgment—i.e., employers—under the theory of respondeat superior. However, § 2802 does not utilize the "within the scope of employment" terminology. Rather, it refers to what seems to be a subset of actions within the "scope of employment": the "discharge of duties."

■ Although there are very few California decisions that discuss § 2802 in the indemnification context, those California courts that have dealt with it have held that in order to be acting in "discharge of (his) duties" the employee must have acted "within the course and scope of ... employment" *and* the action against the employee must be "unfounded." *Devereaux v. Latham & Watkins,* 32 Cal.App.4th 1571, 38 Cal.Rptr.2d 849, 855 (1995) (quoting *Los Angeles Police*

*Protective League v. City of Los Angeles,* 27 Cal.App.4th 168, 32 Cal.Rptr.2d 574 (1994)).

■ Therefore, the union correctly claims that it is exempt from a responsibility to indemnify the Leals unless (1) O'Hara's claims are proven to be "unfounded," or without merit, and (2) the Leals actions were "within the scope of their employment" (which the union admits is the case).[1] As the union observes, a contrary rule that held employers liable whenever an employee simply acted within California's broad definition of "scope of employment" would result in indemnification in many cases where the employee is proven to have acted illegally or in a grossly negligent fashion. Simply put, California's policy decision to broadly construe "within the scope of employment" to create a friendly environment for third-party plaintiffs does not require employers to indemnify employees for costs incurred in defending well-founded claims levied against them by those third parties. Therefore, an employer may argue, without contradiction, that an employee has acted "within the scope of employment" but has not met the other requirement ("unfounded" claims) required for indemnity. As a result, judicial estoppel seems inappropriate.[2]

---

**1.** The district court correctly identified the test for determining whether an employee's conduct is "within the scope of employment." The conduct is within the scope unless it is "so unusual or startling that it would be unfair to include the loss as a cost of the employer's doing business." *Devereaux,* 38 Cal.Rptr.2d at 855. As noted *supra,* this definition has been broadly construed to include some fairly "unusual or startling" behavior.

**2.** We note, but do not decide, that the union may be judicially estopped from claiming the Leals acted illegally—not because of claims the union made in the insurance suit, but because the union denied illegal activity *in its answer to O'Hara's complaint.*

The union, in response to O'Hara's suit, claimed that the Leals had not acted illegally. In the process, the union obtained dismissal of some of O'Hara's claims. Now, for purposes of avoiding payment to the Leals, the union argues the opposite. The union claims it should not be bound by the denials filed in the O'Hara case, because the Leals were in "control," and manipulated the union in order to escape personal liability. But the division between the Leals'

activities and the new leadership is not so clear-cut. In fact, the central flaw in the union's overall case may be the impossibility of drawing a principled distinction between the "old union," led by the Leals, and the "new union" for purposes of determining the right to indemnity.

As the district court noted, the Executive Board to which Ben Leal was ultimately responsible was aware of O'Hara's termination. While the secretary-treasurer may have had primary power under the union bylaws to hire and fire, once the garden-variety personnel decision became a lawsuit that included allegations of serious wrongdoing and illegality, the Executive Board could and should have involved itself in the decision making process. This is especially the case if, as the union now asserts, the Leals' wrongdoing created a clear conflict between their interests and those of the union. But from April 1991, when O'Hara was fired, to the end of 1993, the Board took no action.

The union implies that the board was under the Leals' control, and could not act until board members were "turned out" in elections in December 1993. As the district court observed, however, the union has offered no evidence demonstrating that Ben Leal improperly coerced it into arguing that he had acted properly and

### 2. *"Unfounded" as a Matter of Law*

██ Although the district court erred in finding the union's opposition to the Leal's § 2802 claim to be judicially estopped, the union's claim must nevertheless be denied because O'Hara's claims against the Leals are "unfounded" as a matter of law. *Douglas*, 123 Cal.Rptr. at 690.

██ The union claims that the fact that it felt it necessary to settle the case with O'Hara demonstrates the credibility of her claims, and shows that they can not be considered "unfounded." However, California law permits no such inference. Rather, where a plaintiff agrees to dismiss an action with prejudice, and that action is in fact dismissed, the dismissal "operates as a retraxit under federal law and under California law and therefore compels a conclusion ... that [the] action was 'unfounded.'" *Id.* (internal citations omitted).

Retraxit is a familiar concept in California case law. A dismissal with prejudice is simply the modern name for a common law retraxit. *See, e.g., Torrey Pines Bank v. Superior Court*, 216 Cal.App.3d 813, 265 Cal. Rptr. 217, 220–21 (1989) (holding that "a retraxit is equivalent to a judgment on the merits and as such bars further litigation on the same subject matter") (citation omitted); *Gates v. Bonpane*, 178 Cal.App.3d 301, 223 Cal.Rptr. 678, 685 (1986) (holding that "the effect of a dismissal with or without prejudice, when it is filed in return for consideration from the defendant, acts as a complete bar to any future actions on the same controversy and has the same legal effect as a common law retraxit"). *See also Pension Trust Fund for Operating Eng'rs v. Triple A Mach. Shop, Inc.*, 942 F.2d 1457, 1462 (9th Cir.1991) (noting that California courts' references to retraxit stand for the "well-estab-lished legal principle that res judicata will prevent relitigation of issues that were previously adjudicated in earlier proceedings"). Where the issue decided in the prior adjudication which was voluntarily dismissed with prejudice is identical to the issue presented in the second action, retraxit applies. *Id.; see also Neil Norman, Ltd. v. William Kasper & Co.*, 149 Cal.App.3d 942, 197 Cal.Rptr. 198, 203 (1983) (noting that retraxit does not act as a bar when the "cause of action in the instant case [is] different from the subject matter of the original complaint and the issues resolved in the settlement agreement").

In the present case, O'Hara settled her claims with the union and the Leals, agreeing to a dismissal with prejudice. Neither the union nor the Leals admitted any form of culpability. As a result, under California law the union's claims against the Leals, which are identical to the issues at stake in the previous action, must be viewed as "unfounded" as a matter of law.

The union makes much of the fact that although it settled the O'Hara case, it reserved the right to pursue other claims against the Leals as part of the settlement agreement. However, the boilerplate-like provisions in the agreement that note that the union and the Leals do not "release any claim[s]" against each other are irrelevant to the issue at hand. For purposes of determining indemnity, the relevant inquiry is whether the claims by *O'Hara* against the Leals are "unfounded." Once the claims have been dismissed with prejudice, they are by definition "unfounded." *Douglas*, 123 Cal. Rptr. at 690. Whether the union or the Leals have a further basis for any independent litigation does not bear on this issue. Nothing in California law suggests that once the relevant claims are deemed "unfounded" the employer gets a second bite at the apple

within the bounds of the law, or that he manipulated or deceived the union or the Executive Board. In fact, the union official who replaced Ben Leal as Secretary–Treasurer and CEO was a member of the board during the Leal regime and the union's staff attorney and business agent. The union was not born anew with the demise of the Leals, the new officers suddenly and miraculously washed clean of the sins of their fathers.

Rather, it would appear that the board was content to sit by while the Leals argued that they had acted legally in dismissing O'Hara in order to obtain a favorable disposition, via summary judgment, of many of O'Hara's claims. The union then shifted strategy once the Leals lost political power and faced litigation on O'Hara's remaining claims. Whether this is true or not, it is evident that the lines of control and responsibility within the union are far more nebulous—and the interests of the Leals and the union at the time in question more closely aligned—than the union presently admits.

to prove that the claims do in fact have merit—at least for purposes of escaping the obligation to indemnify the employee for costs incurred in defending the third party suit. Because the claims against the Leals are unfounded as a matter of law and their actions were "within the scope of employment," there is no material issue of fact left to decide. Summary judgment was therefore appropriate.[3]

As a result, we need not consider the union's arguments involving the second prong of § 2802. Indemnity may be found under either prong, the Leals need not meet the criteria of both.

**B.** *The Union's Cross–Claim for Indemnity Under Section 2865*

■ The union sought indemnity from the Leals under California Labor Code § 2865 for costs incurred in defending and settling the O'Hara action. Section 2865 provides that an "employee who is guilty of a culpable degree of negligence is liable to his employer for the damage thereby caused to the employer." Cal. Labor Code § 2865.

■ "Guilty" is the key word. Defense costs can only be recovered where "a judgment has been rendered against an employer for damages occasioned by the unauthorized negligent act of his employee ..." *St. Paul Fire & Marine Ins. v. Cunningham,* 257 F.2d 731, 732 (9th Cir.1958) (quoting *Continental Cas. Co. v. Phoenix Const. Co.,* 46 Cal.2d 423, 428, 296 P.2d 801, 804 (1956)). As O'Hara's claims against the Leals and union were settled with no admission of wrongdoing, it is self-evident that there has

been no judgment nor any determination of guilt. As a result, there is no set of circumstances under which the union could prove an entitlement to indemnity. Summary judgment was therefore appropriate.[4]

**C.** *The Leals' Claim for Attorney's Fees Incurred in Pursuing Their Section 2802 Cross–Claim and Defending Against Union's Section 2865 Cross–Claim*

■ The union admits that if the Leals can meet the test for indemnity under § 2802, they are entitled to attorney's fees incurred in defending and settling the claims made by O'Hara, as this is clearly California law. *Douglas,* 123 Cal.Rptr. at 685. However, the union argues that § 2802 does not allow the Leals to seek attorney's fees incurred seeking to enforce their § 2802 claim for indemnity or in defending against the union's § 2865 claim. The union's argument lacks merit.

■ Analysis of § 2802 should begin with the "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Continental Cablevision, Inc. v. Poll,* 124 F.3d 1044, 1048 (9th Cir.1997) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). As the Leals correctly point out, § 2802 requires indemnity for "*all* that the employee

---

**3.** The union argues that because the Leals' actions were "illegal," the actions can not be considered part of the Leals' normal "discharge of duties." However, as was noted supra, the test for determining "discharge of duties" under § 2802 consists of analyzing whether the action was "within the scope of employment" and whether the claims are "unfounded." Despite the union's claim to the contrary, that is the full extent of the inquiry. "Discharge of duties" is *defined* by the "scope of employment" and "unfounded" requirements; it does not have additional, independent meaning, and does not constitute a separate, third requirement under § 2802. Any illegality would therefore logically be considered in the context of discussing "scope of employment" and "unfounded," and comes

into play only if the illegality is proved (and therefore the claims are deemed "founded") or if the conduct is "so unusual or startling that it would be unfair to include the loss as a cost of the employer's doing business" (and is therefore outside the "scope of employment"). *Devereaux,* 38 Cal.Rptr.2d at 855.

**4.** Although the district court relied on its judicial estoppel argument in granting summary judgment against the union on its § 2865 claim, this court may affirm the summary judgment on any basis supported by the record. *Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 860 n. 15 (9th Cir. 1995), *cert. denied,* 516 U.S. 861, 116 S.Ct. 170, 133 L.Ed.2d 111 (1995).

necessarily expends or loses." The union offers no persuasive reason why "all" shouldn't be read to mean just that. In fact, having admitted that "all" expenses includes attorney's fees incurred in the original O'Hara action, the union is hard-pressed to then argue that *some* fees should be excluded.

This is an especially difficult argument because if fees incurred in enforcing indemnity claims were excluded, the right to claim fees incurred in the original action would be effectively eliminated. An employer who wished to avoid paying an employee who had proven a right to indemnification under § 2802 could simply refuse—secure in the knowledge that it might very well cost the employee more to enforce his rights under § 2802 than the amount expended in the original action. Such was the situation in the present case, where Catherine Leal incurred larger fees in the process of enforcing her indemnification claim under § 2802 than in defending and settling the underlying action with O'Hara.

In sum, the district court did not abuse its discretion in drawing a logical conclusion from the language of the statute in awarding attorney's fees.

### D. *Preemption*

■ As an alternative argument, the union claims that the district court erred by not finding the Leals' claims for indemnification under § 2802 barred because the California statute is preempted by 29 U.S.C. § 501, the Labor Management Reporting and Disclosure Act ("LMRDA"). Section 501 outlines the fiduciary duties of union officials, and permits any union member to sue an officer for breach of those duties, providing the member has first asked that the union itself seek appropriate relief. 29 U.S.C. § 501(a)-(b).

■ A federal law preempts a state law when Congress has "adequately indicated an intent to occupy the field of regulation" or if the state law conflicts with federal law. *Brown v. Hotel & Rest. Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 500–01, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984). A conflict exists when it is impossi-

ble to comply with both state and federal law, or where the state law is an "obstacle" to the full purposes and objectives of Congress. *Id.*

It is clear that Congress did not intend to occupy the entire field of regulation, as the text of LMRDA explicitly makes reference to the continued viability of state laws. 29 U.S.C. § 523. Nor, as the Leals observe, does § 2802 obstruct the central purpose of Congress in enacting LMRDA—to prevent misappropriation of union treasuries and racketeering, *Phillips v. Osborne*, 403 F.2d 826, 828–29 (9th Cir.1968).

While violations of fiduciary duties may arise in a variety of factual contexts, all the cases cited by both parties in the present case have a common denominator: "The real beneficiaries of a successful section 501 action are the union and its entire membership." *Kerr v. Shanks*, 466 F.2d 1271, 1277 (9th Cir.1972). As both the case law and the statutory language indicate, section 501 suits are similar to shareholder derivative actions, in which a plaintiff brings an action in which "any relief obtained ... shall benefit the corporation as a whole and not the suing individual directly." *Phillips*, 403 F.2d at 831. "Correspondingly, Section 501(b) makes it clear that relief granted under Section 501 is for the benefit of the real party in interest, the union whose officers are charged with dereliction." *Id.*

■ O'Hara's claims obviously were not for the benefit of the union. Rather, they were aimed at obtaining personal compensation for alleged harassment and improper termination. As such, § 501 does not apply in any way. Although § 501 has been construed broadly, the section "is not a catch-all provision under which union officials can be sued on any ground of misconduct with which the plaintiffs choose to charge them." *Id.* 403 F.2d at 830 (internal citations and quotations omitted).

Nevertheless, the union argues that there is no requirement that the third party litigation be for the benefit of the union. The union relies exclusively on *United States v. Int'l Bhd. of Teamsters*, 970 F.2d 1132 (2d Cir.1992) for this proposition. *Teamsters*, however, involved the actions of an "Independent Administrator" who was appointed as

part of a consent decree to root out organized crime within a union's local. *Id.* 970 F.2d at 1134. The Administrator, acting in concert with several other special court-appointed officers, refused to allow the local to indemnify a corrupt official. *Id.* 970 F.2d at 1138. Technically, there was no union member/plaintiff suing on behalf of the union, but it is clear that the Administrator was acting in the interests of the union as a whole. In addition, in approving the denial of indemnification to the corrupt official the court made no reference to LMRDA or § 501. *Id.* In any event, the special circumstances of *Teamsters* can not be said to invalidate the usual application of § 501.

In sum, § 501 and § 2802 are not in conflict; they may exist side by side. As a result, the district court did not err in finding that § 501 does not preempt § 2802.

### E. *Attorney's Fees on Appeal*

For the reasons discussed in Part C, *supra*, we grant the Leals' request for attorney's fees incurred in this appeal, pursuant to Ninth Circuit Rule 28–2.3 and Cal. Labor Code § 2802. We refer this matter to the Appellate Commissioner for a determination of the amount of fees and costs.

### IV.

### *CONCLUSION*

For the reasons discussed above, we affirm the district court's decision to grant summary judgment in favor of the Leals on their claim for indemnity under California Labor Code § 2802 and for fees incurred in enforcing their indemnity claim and in defending against the union's indemnity claim. We also affirm the district court's denial of the union's claim for indemnity under California Labor Code § 2865.

AFFIRMED.